[S. F. No. 3089. In Bank.—August 17, 1906.]

ETHEL W. CROCKER, Respondent, v. JOSEPH H. SCOTT, Tax-Collector, etc., Appellant.

TAXATION—SHARES OF STOCK IN NATIONAL BANKS—STATUTES OF UNITED STATES — POLITICAL CODE — STATE DISCRIMINATION.—The assessment for taxation by the state of shares of stock in national banks, authorized by section 5219 of the Revised Statutes of the

United States, under the restriction ''that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state,'' and also authorized in pursuance of that section by sections 3608, 3609, and 3610 of the Political Code, as changed and enacted in 1899, which embody the same restriction, is not subject to the objection that the method of assessment and taxation of national bank shares under the Political Code does in its practical execution discriminate in favor of state banks and state moneyed corporations and against national banks.

ID.—DIFFERENT MODE OF ASSESSMENT—INCLUSION OF SAME ELEMENTS —FEDERAL DECISIONS.—Under the decisions of the federal courts, the mere fact that the shares of stock in state banks and state moneyed corporations are not permitted to be assessed in this state, is not sufficient to show a discrimination in the assessment and taxation of shares of stock in national banks, provided a different method adopted by the state for the assessment and taxation of such state corporations, accomplishes the inclusion in the assessment of the property of said state corporations of all the elements which are embraced in the assessment of shares of stock in national banks to the holders thereof.

ID.— CONSTRUCTION OF STATE CONSTITUTION AND LAWS — EXCLUSIVE PROVINCE OF THIS COURT.—The interpretation of the constitution and laws of this state by this court is recognized by the decisions of the federal courts as conclusive and binding upon the supreme court of the United States and all federal courts; and there is nothing in the decisions of the supreme court of the United States to preclude this court from holding that, under the constitution and laws of this state, the assessing officers are compelled, in their valuation of the property of state banks and other state moneyed corporations, to include all those elements of value which would be embraced in an assessment of the shares of stock therein.

ID.—CONSTITUTIONALITY OF EXEMPTION OF STATE SHARES — DOUBLE TAXATION.—Under the constitution of 1879, specifically requiring the assessment and taxation of shares of stock, an assessment thereof according to the market value as required by law, would include every element entering into and giving value to the shares; and the decision of this court in *Burke* v. *Badlam,* 57 Cal. 594, sustaining the constitutionality of section 3608 of the Political Code, exempting such shares from taxation, rests solely upon the consideration that by the taxation of the entire property of the corporation, including its franchise, every element giving value to its shares was included, and that to tax the shares besides would be double taxation, not contemplated by the constitution or laws. This construction of the constitution and laws has been for more than twenty-five years the only warrant for the enforcement of the statute exempting the assessment of shares of stock in state corporations.

ID.—SYSTEM OF STATE TAXATION—ASSESSMENT OF CORPORATE FRAN-
CHISE.—Under our system of state taxation, as construed by the
decisions of this court, all of the intangible property of a cor-
poration, including its good-will, or dividend- or profit-earning
power, may be properly included in the assessment of its franchise,
the value of which is to be ascertained by deducting from the
aggregate market value of the shares the value of the tangible
property of the corporation.

ID.—REMEDY BY INJUNCTION — ENFORCEMENT OF ILLEGAL TAX.—The
equitable remedy by injunction will not be granted to restrain
proceedings of officers to enforce a tax under the laws of the
state merely on the ground that the tax sought to be enforced is
illegal, unless it appears necessary to protect . the rights of the
property-owner and that he has no adequate remedy at law. Acts
not creating a cloud upon the title of the taxpayer will not be
enjoined; and no . cloud upon real property can be created by
mere sale of the property to the state before the time comes for
the execution of a deed to the state.

APPEAL from an order of the Superior Court of the City
and County of San Francisco refusing to dissolve an injunc-
tion. Carroll Cook, Judge.

The facts are stated in the opinion of the court.

Franklin K. Lane, City Attorney; Percy V. Long, City
Attorney, W. F. Brobeck, Assistant City Attorney; William
G. Burke, City Attorney, and A. S. Newburgh, Assistant City
Attorney, for Appellant.

Lloyd & Wood, and W. S. Wood, for Respondent.

ANGELLOTTI, J.—Plaintiff, who is the owner of 5,096
shares of the capital stock of the Crocker-Woolworth National
Bank, sought by this action to have it adjudged that the assess-
ment and taxation of said shares for the fiscal year ending
June 30, 1901, were illegal and void, and to obtain an injunc-
tion restraining defendant tax-collector from selling or declar-
ing sold to the state, on account of said taxes, certain real
property of plaintiff also assessed to her, and upon which said
taxes on the shares of stock constituted a lien (Pol. Code, sec.
3717), or making any certificate of such sale, and for such
other relief as might be proper. By the allegations of her
complaint, filed June 12, 1901, it appeared that the defendant
had advertised said real property for sale on account of said

CXLIX Cal.—37

taxes, and would on June 24, 1901, unless restrained, sell said property to the state of California, and enter the words "Sold to the state" on the delinquent assessment-list opposite the tax levied on the property of plaintiff, and execute a certificate of delinquent tax sale for said real property, dated June 24, 1901, to the state, and that five years thereafter he, or his successor in office, would execute a deed of said real property conveying to the state the absolute title to said property. An injunction *pendente lite* was asked for, and upon the filing of the complaint such an injunction was issued, restraining defendant from selling or declaring sold said real property to the state of California, from making the entry "Sold to the state" on the delinquent assessment-book opposite the tax levied on plaintiff's property, from making out or executing a certificate of delinquent tax sale to said property, and from in any manner interfering with said property.

Upon the filing of the answer, in which the allegations as to the invalidity of the tax were denied, defendant moved that this injunction *pendente lite* be dissolved. This motion was denied. This is an appeal by defendant from the order refusing to dissolve such injunction.

The principal question involved on this appeal, and the principally discussed by counsel, is as to the proper construction of our revenue laws relative to the assessment and taxation of the property of California corporations, which question is of considerable practical importance, in view of the decision of the United States supreme court in the recent case of *San Francisco National Bank* v. *Dodge*, 197 U. S. 70, [25 Sup. Ct. 384].

The assessment and taxation of plaintiff's shares of stock were made under the supposed authority of the act of 1899 (Stats. 1899, p. 96) amending section 3608 of the Political Code, and adding two new sections to said code, known as sections 3609 and 3610. By these sections, it is required that the stockholders in every national banking association doing business in this state and having its principal place of business herein, "shall be assessed and taxed on the value of their shares of stock therein," the same to be "valued and assessed as is other property for taxation." It is provided that in making such assessment to each stockholder, "there shall be deducted from the value of his shares of stock such sum as is in

the same proportion to such value as the total value of its real estate'' (the real estate being assessed directly to the banking corporation), ''and property exempt by law from taxation bears to the whole value of all the shares of capital stock in said national bank.'' The statute further provides that in the assessment of said shares ''each stockholder shall be allowed all the deductions permitted by law to the holders of moneyed capital in the form of solvent credits,'' and also declares that the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state.

These sections were enacted in an effort of this state to avail itself of the permission of Congress, evidenced by section 5219 of the Revised Statutes of the United States, [U. S. Comp. Stats. 1901, p. 3502], to tax shares of national banking associations to the holders thereof. It is now so well settled as to no longer require the citation of authorities that, under this section, the holders of shares of national banking associations located within a state may be assessed and taxed therefor in such manner as the legislature of such state may provide, subject only to two restrictions, viz.: ''That the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere.''

While there are general allegations in the complaint to the effect that the assessment of plaintiff's shares of stock was not made in the manner prescribed by sections 3609 and 3610 of the Political Code, the specific allegations in support of such general allegations show that the various provisions of those sections were fully complied with, and that if the assessment be invalid, it is so solely because those sections provide a method of assessment and taxation for national bank shares, the effect of which, in its practical execution, is to discriminate in favor of state banks and other state moneyed corporations, and against national banks.

With one exception, all contentions made by learned counsel for plaintiff against the legality of the method thus adopted by the state of California for the taxation of national bank shares, appears to have been already disposed of adversely to him by

the supreme court of the United States in the opinion delivered in the case of *San Francisco Nat. Bank* v. *Dodge,* 117 U. S. 70, [25 Sup. Ct. 384], wherein the views expressed by the circuit court of appeals for the ninth circuit as to similar contentions in another case (*Nevada Nat. Bank* v. *Dodge,* 119 Fed. 57) were approved. It should be noted in passing that this is the first case that has come to this court involving any question as to the validity of sections 3609 and 3610 of the Political Code, the cases above referred to having been instituted in the federal courts. It was specially pointed out by the United States supreme court in the San Francisco National Bank case above referred to, following *Davenport National Bank* v. *Board of Equalization,* 123 U. S. 83, [8 Sup. Ct. 73], that the mere fact that, under the laws of this state, shares of stock in state banks and other state moneyed corporations are not permitted to be assessed and taxed, was not sufficient to show in a statute requiring the assessment and taxation of national bank shares, any discrimination against national banks, provided a different method adopted by the state for the assessment and taxation of the property of such state corporations, accomplished the inclusion in the assessment of the property of such corporations of all those elements which are embraced in the assessment of shares of stock in national banks to the holders thereof. It was said by the supreme court of the United States in the Davenport case cited above, upholding a statute of the state of Iowa providing for the taxation on national bank shares, where no such assessment was allowable in case of a savings bank, the property of which was assessed directly to the corporation: "It is strongly urged that in no other mode than by taxing the stockholders of each and of all the banks can a perfect equality of taxation be obtained. . . . It has never been held by this court that the state should abandon systems of taxation of their own banks, or of money in the hands of their other corporations, which they may think the most wise and efficient modes of taxing their own corporate organizations, in order to make that taxation conform to the system of taxing the national banks upon the shares of their stock in the hands of their owners. All that has ever been held to be necessary is that the system of state taxation of its own citizens, of its own banks, and of its own corporations shall not work a discrimination unfavorable to the

holders of the shares of the national banks. Nor does the act of Congress require anything more than this; neither the language nor its purpose can be construed to go any further. Within these limits, the manner of assessing and collecting all taxes by the states is uncontrolled by the act of Congress." Citing this case, upon this point, the supreme court said in the Dodge case: "As, then, no conflict necessarily arises between the act of Congress and the state law solely because the latter provides one method of taxation of state banks and other moneyed corporations and another method for national banks, it follows that the contention that the state law, for that reason, is repugnant to the act of Congress is without merit."

In the Dodge case, however, it was held by the United States supreme court (four of the justices dissenting) that the California law relative to the assessment of the property of corporations, as construed by the California supreme court, does not compel the assessing officers in the valuation of the property of such corporations, to include all those elements of value which are embraced in the assessment of shares of stock in national banks, and that, for this reason, and the additional reason, held to have been shown by the record in that case, that assessors generally in their assessment of state corporations had failed to include all such elements, the law requiring the assessment of national bank shares at their full cash value to the holders thereof is, both by its terms and in its practical execution, a discrimination in favor of other moneyed capital against national banks, forbidden by the act of Congress which authorizes the assessment and taxation of such shares.

It is claimed that the decision of the supreme court in the Dodge case effectually determines for all time the question as to the validity or invalidity of our existing statute relative to the assessment of national bank shares. But we do not so understand the majority opinion in that case, or the effect of the decision rendered. It, doubtless, effectually disposed of the assessments involved in that case. Its decision to the effect that our statute relative to the assessment of national bank shares cannot be enforced, so long as our laws relative to the assessment of state corporations are construed by this court not to require the assessing officers to include in the assessment of such corporations all of those elements of value which are embraced in an assessment of national bank shares, so as to

produce equality of taxation as respects national banks, is also
undoubtedly a decision upon a federal question, binding upon
us. It may also be conceded that upon a showing in any case
of such facts as were held to be shown by the record in the
Dodge case, as to the practical application of the law relative
to state corporations by assessors generally, we would be com-
pelled to follow the decision in the Dodge case, and hold the
assessment complained of void. But throughout the opinion in
that case, the supreme court recognized the rule repeatedly
declared by it to the effect that in the interpretation of the
constitution and statutes of a state, the construction placed up-
on them by the court of last resort of such state is conclusive
and binding upon the supreme court of the United States and
all federal courts (see *Smiley* v. *Kansas*, 196 U. S. 447, [25
Sup. Ct. 289]), and that opinion ended as follows: ''Our con-
clusion, therefore, does not deny the power of the state of Cali-
fornia to assess shares of stock in national banks, provided only
the method adopted does not produce the discrimination pro-
hibited by the act of Congress. From this, of course, it would
follow that, if the statutes of California, either from their text
*or as construed by the highest court of that state,* compelled
the assessing officers in the valuation of the property of state
banks and other state moneyed corporations to include all
those elements of value which are embraced in the assessment
of shares of stock in national banks, so that there would be
an equality of taxation as respects national banks, *the discrim-
ination which we find to exist under the present state of the
law in California would disappear.''* (The italics are ours.)
Surely it cannot be contended that this court is precluded by
anything decided by the United States supreme court in the
Dodge case from now holding that, under the constitutional
and statutory provisions of this state, and the decisions of this
court construing the same, the assessing officers are compelled,
in their valuation of the property of state banks and other
state moneyed corporations for purposes of assessment, to in-
clude all those elements of value which would be embraced in
an assessment of the shares of stock therein. Whether or not
this is the proper construction of our revenue laws is a ques-
tion as to which this is the court of last resort. While the
views expressed on that question in the majority opinion of
the supreme court necessarily merit the respect and careful

consideration due to every expression of that justly distin-
guished tribunal, this court is not compelled, or indeed at
liberty, to follow it, if it is of the opinion that such views are
erroneous.

Addressing ourselves to this question:—

The portion of the majority opinion in the Dodge case last
quoted recognizes that a state is at liberty to adopt a method
for the assessment of state corporations, under which all those
elements of value which are embraced in an assessment of the
shares of stock would be required to be included in an assess-
ment of the property of the corporation to the corporation.
Such was the method upheld by the supreme court of the
United States in the Adams Express Company cases (*Adams
Express Co.* v. *Ohio State Auditor,* 165 U. S. 194, [17 Sup. Ct.
305], 166 U. S. 185, [17 Sup. Ct. 604]; *Weir* v. *Norman,* 166
U. S. 171, [17 Sup. Ct. 527]), and in the state railroad tax
cases, 92 U. S. 575. (See, also, *Michigan Central R. R. Co.* v.
*Powers,* 201 U. S. 245, [26 Sup. Ct. 459-462].)

Unless we are now prepared to repudiate the doctrine of the
case of *People ex rel. Burke* v. *Badlam,* 57 Cal. 594, and hold
that section 3608 of the Political Code, prohibiting any assess-
ment of shares of stock of state corporations is unconstitu-
tional, it must be held that such has been the method or system
provided by our laws for the assessment of state corporations
for the last twenty-five years. That this must necessarily be
so, will clearly appear from a consideration of the provision
of our constitution declaring what property shall be taxed,
the legislation thereunder, and the decision above referred to.

Section 1 of article XIII of the constitution adopted in 1879,
was, so far as is material in this connection, as follows: ''All
property in the state, not exempt under the laws of the United
States, shall be taxed in proportion to its value, to be ascer-
tained as provided by law. The word 'property,' as used in
this article and section, is hereby declared to include moneys,
credits, bonds, *stocks,* dues, *franchises,* and all other matters
and things, real, personal and mixed, capable of private own-
ership.'' No amendment of this portion of the section has ever
been made. The section, as originally adopted, contained a
proviso exempting growing crops, property used exclusively
for public schools, and such as may belong to the United States,
this state, or to any county or municipal corporation within

this state. The section has been amended to include among the exemptions property used for free public libraries and free museums. Other sections have been added exempting certain property, such as buildings used solely for religious worship, state, county and municipal corporation bonds, personal property of a householder to the extent of one hundred dollars, and fruit and nut bearing trees under the age of four years and grapevines under the age of three years, none of which changes is material to the question here under consideration, except in so far as such changes emphasize the fact that it has always been recognized that nothing capable of private ownership can be exempted from taxation, unless it be specifically declared to be exempt by constitutional provision. There has never been any question as to the effect of this mandatory provision of our constitution. The definition of property required to be taxed *in proportion to its value* was so sweeping and comprehensive that it has uniformly been held that it included everything capable of private ownership, and that the provision placed it beyond the power of the legislature to exempt from taxation either totally or partially anything capable of private ownership, not exempted by the constitution itself. This, of course, is so clear as to property specifically mentioned in the provision, such as bonds, stocks, franchises, etc., as to require no argument. As said in *Mackey* v. *San Francisco,* 113 Cal. 392, 397, [45 Pac. 696], "The constitution not only provides that all 'property' shall be taxed, but defines the word 'property' and expressly includes 'bonds' in that definition, thus placing it beyond the power of the legislature or the courts to say that bonds are not property within the meaning and intent of the constitution." The same is, of course, true as to shares of stock, which are also expressly included. (See *Bank of California* v. *San Francisco,* 142 Cal. 276, 285, [100 Am. St. Rep. 130, 75 Pac. 832].)

The taxation of *all* property not specifically exempted, including shares of stock, was thus required by constitutional provision. The only thing left for the legislative department to do was to provide a method for the ascertainment of the value of the property to be taxed. To this extent, the constitutional provision was not self-executing. (*McHenry* v. *Downer,* 116 Cal. 20, 24, [47 Pac. 779].) At its first session after the adoption of this constitution, the legislature, by act approved

March 22, 1880, amending certain sections of the Political Code, performed its duty in this behalf. (Amendments to Political Code, 1880, p. 5.) Substantially re-enacting provisions of the code in force at the time of the adoption of the constitution, by section 3627 it was provided that "all taxable property must be assessed at its full cash value," and by section 3617 it was declared that "the terms 'value' and 'full cash value' mean the amount at which the property would be taken in payment of a just debt due from a solvent debtor." In these respects there has never been an amendment of either of these sections. Section 3627, as then enacted, contained a provison to the effect that the proportionate value of the stock of domestic corporations, for purposes of assessment and taxation, should be its "market value," deducting the value of such property assessed to the corporation "in this state, or elsewhere, of which such capital stock is the representative," but this portion was eliminated by the amendment of 1881, of which we shall presently speak. The act also included section 3640, providing for the assessment of shares of stock, "the assessable value of each share of its stock" to be ascertained "by taking from the market value of its entire capital stock the value of all property assessed to it, and dividing the remainder by the entire number of shares into which it is divided." As was said in the majority opinion of the United States supreme court in the Dodge case, the words "market value" are, and as here used were, but synonymous with the terms "value" and "full cash value," defined in section 3617, "for, eliminating exceptional and extraordinary conditions, giving an abnormal value for the moment to stock, it is apparent that the general market value of stock is its true cash value."

We thus had in 1880, as we have ever since had, a mandatory constitutional provision, specifically requiring the assessment and taxation of shares of stock, and the assessment, under the statutory rule applicable to *all* property, then adopted and ever since in force, was to be at the "full cash value," or "market value," as those terms have already been defined. It has several times been said, although it is so self-evident as not to require statement, that an assessment of the shares of stock as required by the constitution would necessarily include an assessment of every element entering into and giving value

to the shares. For the purposes of taxation, all such elements, tangible and intangible, were, by the constitution, in effect declared to be property subject to taxation. As we have seen, the legislation of 1880 was entirely consistent with this constitutional provision.

By the act of March 7, 1881, (see amendments to codes, 1881, p. 56,) certain changes were made by the legislature. Section 3607, providing that all property not exempt must be taxed, was amended by the addition of a proviso to the effect that nothing in the code should be construed to require or permit double taxation, the provisions of section 3627 and 3640 as to the assessment of shares of stock directly were eliminated, and section 3608 was added. The last-named section was as follows: "Shares of stock in corporations possess no intrinsic value over and above the actual value of the property of the corporation which they stand for and represent, and the assessment and taxation of such shares and also of the corporate property would be double taxation. Therefore all property belonging to corporations shall be assessed and taxed, but no assessment shall be made of shares of stock, nor shall any holder thereof be taxed therefor." This section has been amended only once,—viz. in 1899,— and then simply by excepting from its operation national banking associations.

It requires no argument to show that this section was in absolute defiance of the constitutional provision expressly requiring shares of stock to be taxed in proportion to their value, if its legal effect was to relieve from taxation a single element that entered into and gave value to the shares of stock. As we have seen, the effect of the constitutional provision was to render all of such elements for the purposes of taxation, property required to be taxed in proportion to their value. This legislation could be sustained as a valid exercise of legislative power only upon the theory that, under our laws, all of these elements constituted, for the purposes of taxation, property "belonging to the corporation," which must be included in the assessment of the property of the corporation.

Upon this theory, section 3608 was upheld by this court in the case of *People ex rel. Burke* v. *Badlam,* 57 Cal. 594, generally known as *Burke* v. *Badlam.* The court there had

under consideration an application for a writ of mandate to compel the assessor of the city and county of San Francisco to assess shares of stock in various corporations to the holders thereof, and to assess to depositors in savings banks the sums deposited by them. So far as the first proposition was concerned, the proceeding was brought to determine the validity of section 3608, which was claimed by the applicant to be in conflict with the constitutional provision requiring stocks to be taxed. The case was most elaborately argued by eminent counsel, and the decision is clear and direct upon the question here under discussion. The opinion was written by Mr. Justice Ross, and signed by Justices Sharpstein, McKee, and Thornton, and Justices McKinstry and Myrick specially concurred in the views of the majority upon the point we are considering. It was held therein that the language of the constitution neither required nor permitted double taxation; that the legislature had the right thereunder to say, and had said, by section 3608, that all of the property of the corporation should be assessed to the corporation, and should not again be assessed for the same taxes; that the property of the corporation included its franchise and everything else evidenced by the certificates of stock; that while the share of each stockholder was undoubtedly property, it was an interest in the very property held by the corporation, ''his right to a proportionate share of the dividends and other property of the corporation, nothing more''; and that when all the property of the corporation, including its franchise, was assessed, which it was to be presumed would be done by the assessor in obedience to the requirements of the law, any further assessment of the shares to the individual stockholders would be double taxation. It was said therein, among other things: ''Now, what is the stock of a corporation but its property—consisting of its franchise and such other property as the corporation may own? Of what else does its stock consist? If all this is taken away, what remains? Obviously nothing. When, therefore, all of the property of the corporation is assessed—its franchise and all of its other property of every character—then all of the stock of the corporation is assessed, and the mandate of the constitution is complied with. . . . To assess all of the corporate property of the corporation, and also to assess to each of the stockholders

the number of shares held by him, would, it is manifest, be assessing the same property twice, once in the aggregate to the corporation, the trustee of all of the stockholders, and again separately to the individual stockholders. . . . In the case of the corporation, take away all of its property, which, it must be remembered, includes its franchise, and the shareholder no longer has any property. . . . In the case of the corporations to which we have referred, the legislature has declared that all the property held by such corporations shall be assessed to them. It has not attempted to exempt any property from taxation not exempted by the constitution itself, and, of course, could not do it if it had. It has only said that the property shall be assessed to the corporation, and shall not be again assessed for the same tax. This it had the right to say.''

As we have seen, section 3608 could be upheld as a constitutional enactment only on the theory that under it and other existing statutory provisions, everything entering into and giving value to the shares of stock was ''property belonging to the corporation'' to be included in the assessment of the property of the corporation. What we have said as to *Burke* v. *Badlam* shows that section 3608 was therein held to be valid upon this ground. That case has always been recognized as involving the question as to the constitutionality of that section and as decisive thereon. (See *Spring Valley W. W.* v. *Schottler*, 62 Cal. 69, 115; *McHenry* v. *Downer*, 116 Cal. 20, 28, [47 Pac. 779, 782] ; *Bank of California* v. *San Francisco*, 142 Cal. 276, 285, [100 Am. St. Rep. 130, 75 Pac. 832].) Of it we said in the case last cited: ''This case necessarily involved the question as to the constitutionality of section 3608 of the Political Code, prohibiting the assessment of shares of stock to the holders thereof. Such shares being undoubtedly property, unless they were otherwise assessed, the section was clearly unconstitutional, in view of the provision of the constitution requiring *all* property to be taxed. According to the decision of the court they were under the law to be otherwise assessed,—i. e. everything to be represented by the certificates was to be assessed to the corporation.''

*Burke* v. *Badlam*, 57 Cal. 594, is the only case prior to this appeal in which the precise question here under consideration

was necessarily involved. In the discussion of this question, that case nevertheless appears to have been entirely overlooked in the majority opinion of the United States supreme court in the Dodge case. The views expressed in the opinion in that case have never been questioned by any later expression of this court, and for more than twenty-five years the decision has stood as a construction of our statutes, to the effect that those statutes require that everything entering into and giving value to the shares of stock of a corporation shall be assessed to the corporation as property of the corporation. This construction of the statutes of California has, during all this time, been the only warrant for the enforcement of the statute prohibiting the assessment of shares of stock.

In the later case of *Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, 118, this court said: "But, by declaring, as was done in section 3608, that shares of stock were not to be taxed because they possessed no intrinsic value over and above the value of the property of the corporation which they stand for and represent, and as taxing of the shares and property both would be double taxation, and therefore the shares should not be assessed, but the property should, no doubt it was their intention to tax everything in the shape of property owned by the corporation; that everything entering into and giving value to the shares should be taxed. It cannot be doubted that the legislature in acting on the subject of revenue and taxation during the session of 1881, did not intend to leave the system in relation to so important a matter in such a shape, that so large an amount of property as indicated by the difference between the market value of the shares of corporations and the value of the tangible property of such corporations, should escape taxation. To come to any other conclusion would be to impute to that body a most culpable dereliction of duty."

There is certainly nothing in the opinion in *Bank of California* v. *San Francisco,* 142 Cal. 276, [100 Am. St. Rep. 130, 75 Pac. 832], which can reasonably be construed as throwing any doubt upon the doctrine of *Burke* v. *Badlam,* 57 Cal. 594. That was an action brought to recover taxes paid under protest, and involved simply a question as to the validity of an assessment of seven hundred and fifty thousand

dollars upon the mere corporate franchise of a banking corporation, the plaintiff bank challenging the validity of the assessment upon the ground that it had no assessable franchise whatever. It appeared that the assessor had found that the difference between the value of the tangible property of the bank and the market value of its shares was over two million dollars, and had determined this to be the value of the corporate franchise, and had valued the franchise for purposes of assessment at the sum of seven hundred and fifty thousand dollars. As suggested by Mr. Justice Brewer in the dissenting opinion in the Dodge case, the state was not challenging the assessment, and the question as to whether the assessment should have been higher was not considered. Proceeding expressly upon the authority of *Burke* v. *Badlam*, 57 Cal. 594, and *Spring Valley Water Works* v. *Schottler*, 62 Cal. 69, 118, it was held that such a corporate franchise was, under our laws, assessable as a part of the property of the corporation, and the assessment was sustained. It was not necessary in that case to determine whether or not all of those elements, exclusive of the tangible property of such a corporation, that give value to the shares of stock, should be assessed as "*franchise*," which was the assessment under consideration in that case. It was enough for all the purposes of that case that the corporation had such an assessable franchise, and that the value thereof was at least a portion, if not all, of the difference between the tangible property and the aggregate market value of the shares. But upon the question as to whether the assessing officers are, under our laws, required to assess in some form, as property of the corporation, everything that gives value to the shares, no doubt whatever as •to the correctness in any respect of any prior decision was expressed in the opinion, or can reasonably be implied therefrom.

It was said by the dissenting justices in the Dodge case, speaking of the construction placed by this court upon our statutes in this regard: "Obviously, that court construes them as including within the corporate property the aggregate value of all the shares of stock, and that, while they forbid the assessment and taxation of shares of stock in a state corporation, they require that all the value represented by those shares of stock be assessed and taxed against the cor-

poration; so that, when you ascertain the value of a single share of stock, and multiply that by the number of shares in the corporation, you have the value of the corporate property subject to taxation." This appears to us to be the necessary result of our decisions upon this question. Such a construction does not, of course, require the assessment as intangible property of the value of such tangible property as is exempt from taxation under the laws of the United States and this state.

It is urged that many elements entering into and helping to fix the market value of stock, which would be included in an assessment of the shares themselves, such as good-will, dividend- or profit-earning power, etc., could not be assessed by the assessing officers as property of the corporation, and if they could be so assessed, there is nothing in our law requiring the assessor to so value those things that the entire valuation of the property of the state corporation will equal the market value of the shares. If this be true, it must follow, as we have already shown, that section 3608 of the Political Code, prohibiting any assessment of shares of stock, is unconstitutional. That a system of taxation may be adopted by a state under which all those elements may be included as property of the corporation in the assessment against the corporation was, as we have seen, held by the United States supreme court in several cases. (See cases cited, *supra,* and recognized both in the Davenport case, and in the majority and minority opinions in the Dodge case.) This conclusion necessarily follows the undisputed doctrine that a state may assess and tax at their full cash value shares of stock in corporations. That our statutes, as construed by this court, positively command the assessment of all such elements in such a manner as to make the aggregate value of the corporate property measure up in amount to the aggregate market value of the shares, appears very clear to us. Those statutes expressly require that *all* property belonging to corporations shall be assessed and taxed at its "full cash value," defined to be the amount at which the property will be taken in payment of a just debt due from a solvent debtor, and this positive injunction is as applicable to the intangible property of a corporation, such as its corporate franchise, which admittedly must be assessed and taxed, as it is to the tangible

property, such as real estate. As was said by Mr. Justice Brewer, in the dissenting opinion in the Dodge case, "But it is said there is no specific command to include in the property of a state corporation the good-will, dividend-earning power, and the like, and that they are necessarily included in the selling value of the stock of any corporation. It is true, these items are not in terms mentioned, but neither are desks and furniture. The language is general, so general that it includes everything, not excepting good-will, dividend-earning power and the like, for they are 'capable of private ownership.' They belong to the corporation. There is no good-will in a share of stock over and above the good-will which belongs to the corporation, and, if the corporation sells and conveys all that it possesses 'capable of private ownership' it sells and conveys its good-will, and there is nothing left of good-will or anything else belonging to the stockholders. This is so plain that he who runs may read." The statutes expressly requiring the assessment of all the property, both tangible and intangible, to be at its full cash value, it is obvious that there is but one method by which the cash value of the intangible property can be ascertained, a method ordinarily much more certain and accurate in its results than any method that can be devised for the ascertainment of the value of real estate and many articles of personal property. It is settled law in this state that a proper method for ascertaining the value of the franchise of a corporation is by deducting from the aggregate market value of its shares the value of its tangible property, and taking the difference as the value of the franchise. (See *San Jose Gas Co.* v. *January,* 57 Cal. 614; *Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, 117; *Spring Valley Water Works* v. *Barber,* 99 Cal. 36, 38, [38 Pac. 735]; *Bank of California* v. *San Francisco,* 142 Cal. 276, 287; [100 Am. St. Rep. 130, 75 Pac. 832].) It was said by Chief Justice Beatty in his concurring opinion in *Stockton Gas etc. Co.* v. *San Joaquin Co.,* 148 Cal. 313, [83 Pac. 59], that the method of ascertaining the value of a corporate franchise by taking the difference between the market value of the shares and the value of the tangible property as the basis of assessment has been sanctioned in several cases, and nowhere disapproved. It appears too clear for question that such difference between the market value of

the shares of stock and the value of the tangible property is necessarily the aggregate cash value of such intangible property as under our system must be held to belong to the corporation, call it franchise, good-will, or dividend- or profit-earning power, or what you please. Whatever it is, our laws positively require it to be assessed by the assessing officers to the corporation at its full cash value, precisely as all other property is required to be assessed at its full cash value. The aggregate value of the shares evidenced by the certificates of stock, must be the aggregate cash value of the property of the corporation held by it in trust for its stockholders. This being so, the method already approved by the decisions of this court as a "proper method" is not only a "proper method." It is the only method by which the cash value of the intangible property required to be assessed can be ascertained, and is, therefore, the method necessarily enjoined by our laws upon the assessing officers.

Whether or not in the case of a banking corporation which possesses no other franchise than its corporate franchise, the whole of its intangible property may be considered "franchise" and be assessed *eo nomine*, as seems to be clearly intimated by the cases we have cited, is not absolutely necessary to a determination of the question under discussion. This was also true of the case of *Bank of California* v. *San Francisco*, where the decision of such question was expressly withheld. (142 Cal. 289, [100 Am. St. Rep. 130, 75 Pac. 832].) It is enough for the purposes of this discussion, that *all* of such intangible property must be assessed under some name as the property of the corporation. It is, however, apparent that, while it is a simple matter enough to fix the value of the whole, it would be impossible to segregate and apportion the value of all the elements entering into the making up of this property, and nothing of benefit to any one could be accomplished by any such attempted segregation. We are satisfied that under the system of taxation in this state as construed by our decisions, all such intangible property may be properly included in the assessment of the corporate franchise of the corporation.

Another question presented upon this appeal is as to the propriety of the remedy by injunction. We are satisfied that no injunction *pendente lite* restraining such acts upon the

CXLIX Cal.—38

part of the tax-collector as were specified in the injunction, should have been issued, and that the motion to dissolve this injunction should have been granted.

It is well settled by the decisions in this state that the equitable remedy by injunction will not be granted to restrain proceedings of the officers on whom is devolved the duty of enforcing the tax laws, merely because the tax sought to be enforced is illegal. To justify the exercise of such a remedy, it must appear that the same is necessary to protect the rights of the property-owner and that he has no adequate remedy at law. In the matter of granting such relief, therefore, a court of equity will go no further than is necessary to protect the rights of the property-owner, and will not to any greater extent impede the officers of the state in the performance of their duties. This general matter has several times been under consideration by this court, notably in the cases of *Savings and Loan Society* v. *Austin*, 46 Cal. 415, 488, and *Houghton* v. *Austin*, 47 Cal. 646, 650, 666. In the first of these cases, which was an appeal from an order refusing to dissolve an injunction, this court said: "If the tax were conceded to be illegal, it does not necessarily follow that, for that reason alone, the plaintiff would be entitled to an injunction. In *Dows* v. *City of Chicago,* 11 Wall. 110, Mr. Justice Field, in delivering the opinion of the court, says: "Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of government, and thereby cause serious detriment to the public. No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizen whose property is taxed, and he has no adequate remedy by the ordinary processes of law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or where the property is real estate, throw a cloud upon the title of the complainant, before the aid of a court of equity can be invoked. This, we think, is a correct statement of the rule, as established by the weight of authority." This ruling was affirmed in *Houghton* v. *Austin,* 47 Cal. 646, 650, 666, and these cases have never been overruled or modified in this respect by any later decision. The rule appears to be founded on well-settled equitable principles

and appears to us to be absolutely essential to prevent embarrassment in the matter of the execution of revenue laws by the proper officers, and to be specially applicable in the matter of preliminary injunctions where the question as to the legality of the tax has not been finally determined.

Under that rule, no act on the part of officers required by the law to be performed in the execution of the revenue measures will be stayed by injunction, unless that act is of such a nature, and will have such an effect, as to irreparably injure the property-owner, or, as said in the case above cited and quoted from, ''where the property is real estate, throw a cloud upon the title of the complainant.''

It is obvious that a general allegation that such an act will cast a cloud upon the title of the complainant, and will be to her great and irreparable injury is insufficient to justify such relief, where the laws of the state show clearly that no such effect can be produced.

We have already stated the acts specifically prohibited by the temporary injunction here involved. It is very clear that, under our law, none of these acts could have the effect heretofore stated. It may be conceded that the execution of a deed of said property by the tax-collector to the state of California, which deed, by express provision of the Political Code, would purport to convey the absolute title, and be primary evidence as to certain matters affecting the regularity of the proceedings and conclusive evidence as to other of said matters (secs. 3786, 3787), would constitute a cloud upon the title, within the rule enunciated in a long line of cases (see *Maskey* v. *Lackmann,* 146 Cal. 777, 780, [81 Pac. 115]), and that, therefore, the execution of such a deed, pending proceedings to determine the validity of the assessment, might, in a proper case, be enjoined. Such, however, was not one of the acts specifically enjoined here, all of those acts being things required by the law to be done before any deed can be executed. No such deed could be executed by the tax-collector until the expiration of five years from the date of sale. (Pol. Code, secs. 3781, 3785.) We are satisfied that, under our law, none of these acts so enjoined could in any way prejudice plaintiff's rights, or throw a cloud upon her title.

Under our present system, the only cloud upon the title of

the taxpayer created prior .to the execution of such a deed to the state, is such cloud as arises from the fact that the tax is a lien upon his property in favor of the state, attaching as of the first Monday in March (the date of assessment), and continuing until the taxes are paid or the property sold for the payment of the tax. (Pol. Code, secs. 3716, 3717, 3718.) The effect of this lien is in no degree practically added to by anything required to be done by the tax-collector prior to the execution of the deed. To comply with the laws of the state looking to the enforcement of unpaid taxes, the tax-collector is required to make publication of the entire delinquent list within a certain period, together with a notice that at a stated time, the property upon which the lien of the state exists will, by operation of law, be sold to the state, and at the time stated, to declare all such property, as to which the taxes have not been paid, sold to the state, to make an entry accordingly upon the delinquent list, and to make out and file of record a certificate of such sale. (Pol. Code, secs. 3764 to 3778.) The only practical effect of a compliance with these provisions, in addition to preserving the rights of the state in the matter of such taxes as are ultimately found to be valid, is to start running the period of five years within which redemption can be effected and at the expiration of which a deed may be issued to the state. During this period, the legal title to the property continues in the taxpayer, subject to the lien in favor of the state created *by the assessment and levy.* Neither the certificate of sale (see *Clarke* v. *Mead,* 102 Cal. 516, [36 Pac. 862]) nor any of these acts of the tax-collector constitutes even *prima facie* evidence as to the validity of assessment or levy, and the taxpayer has a full and complete protection against the creation of any cloud upon his title in the enjoining of the *execution of the deed.* Under such circumstances, equity will not interpose to the extent of preventing the performance of those preliminary acts which cannot affect the rights of a taxpayer, the failure to perform which may result in prejudice to the state in the enforcement of its revenue laws.

The order denying the motion to dissolve the injunction is reversed.

Shaw, J., Sloss, J., Lorigan, J., and Beatty, C. J., concurred.

McFarland, J., dissented.

HENSHAW, J., concurring.—I concur in the judgment, and generally in the reasoning and principles announced in the prevailing opinion. Something more, however, remains to be said upon the question, and no better time for its saying presents itself than is offered by the present case. Concededly it is of the highest importance to the commonwealth that the tax system should be uniform and just and that no one person or class of persons should be exempt from the payment of a tax the collection of which is enforced against others. *Per contra*, that no one person or class of persons should be compelled to pay a tax which is not enforced against others. The fault of our system in this regard—a fault of which the taxpayer may justly be heard to complain—is not in the assessment of intangible property represented by the difference between the market value of the stock and the value of the tangible property, but it is in calling this difference the value of the "franchise" and taxing it as franchise. A franchise is simply a special privilege granted by the state directly or through one of its mandatories. When that privilege is the privilege of *being* a corporation, when the franchise granted is simply the franchise *to be* a corporation, that franchise can have no greater value than what it has cost the incorporators to obtain it and what it would cost other incorporators to obtain the identical privilege. Since in this state these franchises are open to all upon the same conditions, that cost is the mere expense of filing papers and procuring clerks' certificates, say ten dollars, and it cannot be said that such a franchise or privilege can ever be worth more than that amount while our laws remain unchanged. A tremendous distinction is, of course, to be observed between this franchise to be a corporation and some special franchise to do a particular thing, as the franchise to use a particular city street for street railroad purposes. Such a franchise, and others of like kind, often have enormous value, and this value comes from the fact that once granted, no other person can obtain them. It is not open to citizens upon the same terms, but it is in its nature monopolistic. But I advert to this merely in passing, for we are here dealing with the franchise to be a corporation. To illustrate the fallacy of assessing the dif-

ference in value between the market value of stock and the value of the tangible property as franchise let us instance a case. Three men as copartners are engaged in the business of selling dry goods. By the exercise of varied qualities which go to make business success they have developed an enormous and profitable business. They are assessed for the value of their tangible property, the stock on their shelves and their solvent credits or book accounts. They decide to incorporate, and without the slightest change in location, stock, book accounts, without the slightest change of any kind, they pay ten dollars to the state of California, obtain articles of incorporation and issue to themselves each one third of the shares. These shares have a value far in excess of the total value of the goods on the shelves and of the solvent credits. Upon an investment say of a million dollars their profits show a return of six per cent upon ten millions of dollars. Finding, therefore, the value of the solvent credits and goods on hand at one million dollars and the value of the stock at ten million dollars, the assessor assesses this corporation nine million dollars for its franchise, for which franchise but the day before it paid the state ten dollars, and as to which franchise—which is merely the privilege as a corporation to carry on the business of buying and selling dry goods—any three men in the state of California may secure the identical privilege for the same expenditure of money. The necessary result would be that while yesterday the privilege was assessed for a million dollars, to-day the corporation is assessed for ten millions of dollars, nine millions of which is the so-called value of the franchise. I am not disputing the existence of this nine millions of property. I do insist that it was not called into being, nor in any way created, through the privilege to be a corporation so granted by the state. This nine million dollars is, and logically can be, nothing other than the good-will of the business, which good-will is itself a species of property distinctly recognized by the laws of this state, property capable of private ownership, and, therefore, property which should be assessed. And not only should it be assessed, but I insist it should be assesesd not under the misleading and deceptive misnomer of franchise, but assessed for what it really is, good-will. (Civil Code, secs. 655, 992, 993.) Even if the legislature should declare that it should

be assessed as franchise, this declaration does not make it franchise. The legislative declaration that it should be assessed as "beauty" would not make it beauty. The simple proof of the matter is that of this nine million dollars assessed as franchise, $8,999,990 are in effect good-will, and the remaining ten dollars is the value of the franchise. Nor do I think that this matter should be lightly put aside with the statement that as the property after all is assessed it does not matter under what name it pays its taxes. Logical results can only be reached by correct reasoning, and correct reasoning and a true interpretation is essential to that great desideratum, the uniformity in operation of our revenue system. Therefore, I am here contending that the property which is assessed should be assessed under its true name, and that this should be declared by this court, not only because it is the logical and correct interpretation of the law, but because it is of great moment that the assessors themselves should be properly directed in their delicate tasks, and that the taxpayer in turn should know upon just what property of his the law is imposing its burden. My position, therefore, is not that corporations should not pay this tax. But they should not be expected to pay it under the blind and misleading guise of franchise. They should be called upon to pay taxes upon the property as it actually is—the good-will. No justice of this court, I think, disagrees with me upon the proposition that in fact it is the good-will which is being assessed under the guise of franchise, and no one will question but if the good-will of a corporation is thus subject to assessment in this state, the good-will of every other business, whether carried on by a partnership or an individual, should equally be subject to taxation.