[Sac. No. 2014. In Bank.—April 1, 1914.]

## LAS ANIMAS & SAN JOAQUIN LAND COMPANY, Incorporated (a Corporation), Respondent, v. C. F. PRECIADO, Tax-Collector for the County of Madera et al., Appellants.

SCHOOL DISTRICTS—DIVISION OF COUNTY—JOINT DISTRICT.—The law recognized and declared, even before the adoption of section 1580 of the Political Code, that a school district whose territory, by the division of a county, lay partly in one and partly in another county, *ipso facto* became a joint district.

ID.—ANNEXATION OF TERRITORY BY DISTRICT IN NEW COUNTY—LEVY OF TAXES.—Where a county is divided so that part of an existing school district falls in the new county, the board of supervisors of the new county is without authority to order the annexation of that portion of the district to one of its own districts, and if such order is made, the district to which the annexation is thereby attempted is without authority to levy taxes upon the property so annexed.

ID.—INJUNCTION AGAINST TAX SALE—WHEN PROPER REMEDY.—If such a tax is levied, an owner of land affected thereby is entitled to an injunction against a sale of his property for nonpayment of the tax. The equitable consideration of a disturbance of the revenues or fiscal system is absent in such case.

ID.—UNAUTHORIZED LEVY OF TAX—JURISDICTION OF EQUITY TO GRANT RELIEF.—Where an assessment is of property not subject to the particular tax or where the persons exacting it are without authority in the premises, and where they are seeking to exercise authority over lands not within their corporate jurisdiction, equity will raise its restraining hand.

APPEAL from a judgment of the Superior Court of Madera County. George E. Church, Judge presiding.

The facts are stated in the opinion of the court.

Robert L. Hargrove, and W. H. Larew, for Appellants.

Edward F. Treadwell, Laurence J. Kennedy, and Johnston & Jones, for Respondent.

HENSHAW, J.—The Firebaugh School District, organized in 1878, at that time and for many years thereafter lay wholly

within the territorial limits of Fresno County. In 1893, by
legislative enactment, Madera County was carved out of the
territory of Fresno County, with the result that part of the
territory embraced within the Firebaugh School District re-
mained in Fresno County and part fell in Madera County.
The Firebaugh School District thereafter continued to exer-
cise its control over the whole territory. In 1907 the Dos
Palos Joint Union High School District was formed and in-
cluded with other districts, all of the Firebaugh School Dis-
trict. Since its formation the Dos Palos High School District
has asserted the right and exercised the power to tax all of
the territory of the Firebaugh School District. In 1908 the
county superintendent of schools of Madera County, acting
under the supposed authority of section 1551 of the Political
Code, reported to the supervisors of his county that the Fire-
baugh School District ''has never by any action of the board
of supervisors of the two counties, as the statutes require, been
made a joint school district,'' and that portion of the Fire-
baugh School District lying within Madera County had never
been attached to any school district within Madera County,
and that from this has resulted an indefiniteness in the bound-
aries of the school district of Madera County. Thereupon the
supervisors of Madera County made an order attaching this
land to the La Vina School District of Madera County. The
La Vina School District was one of the districts of the Madera
High School District, and the Madera High School District
in levying its taxes asserted and exercised the right to assess
the lands of the Firebaugh School District in Madera County.
The plaintiff is an owner of lands within the disputed area
and brings an action, in its essence, to have determined in
what school district the power to tax its lands really rests.
In form the pleading alleges that the land is in the Firebaugh
School District and the Dos Palos Joint Union High School
District, and that the assessment and levy of the Madera
Union High School District is void. The prayer is for an
injunction to restrain the proper officers acting for the
Madera Union High School District from advertising plain-
tiff's property for sale and from selling it for nonpayment
of the tax which that district has levied. It is conceded that
in this particular instance, for irregularities and informali-

ties, the tax levy of the Dos Palos Joint Union High School District is invalid as to the land here in question.

Sections 1577, 1578, and 1579 of the Political Code contain provisions for the creation of joint districts. A joint school district is one whose territory lies partly within the boundaries of one county and partly within the boundaries of another. Before the enactment of these sections referred to, section 1583 of the Political Code was in existence and made distinct recognition by name of joint districts. Therefore the law recognized the *existence* of joint districts even before it provided a method for their *creation*. The contention of appellant is that such a joint district can only come into existence by following the method prescribed in section 1577 et seq of the Political Code. The position of respondent—in which we think it is clearly right—is that the law recognized and declared that a school district whose territory, by the division of a county, lay partly in one and partly in another county, *ipso facto* became a joint district. If a part of the territory of a regularly recognized school district was to be taken from it solely by reason of the fact that through the creation of a new county a part of the land fell into such new county, we would look for some legislative declaration to that end. (*Conover* v. *Parker,* 57 N. J. L. 631, [31 Atl. 769].) We not only find none, but to the contrary we find in section 1580 of the Political Code (adopted to be sure after the attempted incorporation of the disputed area with the Madera Union High School District) an express declaration that whenever such a condition results, the original district ''shall by operation of law constitute and become established as a joint school district.'' Furthermore, it is undisputed that continuously and for many years after the creation of Madera County the Firebaugh School District exercised its authority over the land in Madera County, and the statute of March, 1905 (Stats. 1905, p. 243), operates to confirm the authority thus exercised. That statute declares as follows: ''All school districts in this state that for a period of five (5) years have been acting as school districts under the laws of this state are hereby declared to be duly incorporated and to be bodies politic under the laws of this state, and as such school districts, under their appropriate names, shall have all the rights and privileges and be subject to all the duties and obligations

of duly incorporated school districts.''  For this additional
reason, therefore, it must be held that the disputed area in
Madera County was a part of and within the jurisdiction of
the Firebaugh district.  Such being the case, the attempt of
the supervisors of Madera County to deprive the Firebaugh
district of it and to annex it to one of its own school districts
was abortive, and the result is that neither the La Vina School
District nor the Madera Union High School District has any
right to exercise the taxing power upon and against plaintiff's
land.

The argument that respondent is here attacking the organ-
ization of one or more of the school districts is baseless.  Re-
spondent freely concedes the legal existence of one and all of
the affected districts and, in effect, asks merely that their
boundaries be delimited and defined to the end that it may
know in which one its property is situated and to which one it
shall pay its tax.  As little force attaches to the further con-
tention that by reason of the fact that respondent paid a
similar tax assessed upon its lands and levied by the Madera
Union High School District it is estopped from contesting the
validity of this assessment.  The proposition is completely
answered by *Wood* v. *County of Calaveras,* 164 Cal. 398
[129 Pac. 283].)

There is thus left for consideration the single proposition
as to the availability to respondent of the remedy which it
has sought, and herein it is argued that under the authority
of such cases as *Savings & Loan Society* v. *Austin,* 46 Cal.
415; *Houghton* v. *Austin,* 47 Cal. 647, and especially the case
of *Crocker* v. *Scott,* 149 Cal. 575, [87 Pac. 102], the remedy
by injunction is not available to respondent.  It might be a
sufficient answer to this to say that irrespective of the injunc-
tional relief sought and awarded, plaintiff had the unques-
tioned right under section 738 of the Code of Civil Procedure
to have determined these conflicting lien claims asserted to
affect its property, and that this being done, the fact that an
injunction was also asked would be immaterial to the cause of
action specifically pleaded.  (*Haggin* v. *Kelly,* 136 Cal. 481,
[69 Pac. 140]; *Castro* v. *Barry,* 79 Cal. 443, [21 Pac. 946];
*Dranga* v. *Rowe,* 127 Cal. 506, [59 Pac. 944]; *Hancock* v.
*Board of Education,* 140 Cal. 554, [74 Pac. 44].  But it may
be better to discuss the principal question to remove any

misunderstanding which may exist as to the scope and meaning of *Crocker* v. *Scott* and the cases like it.

The fundamental proposition in this consideration is that equity will afford relief to a party from whom an illegal tax has been collected or is sought to be collected. But as equity makes good only the deficiencies of the law, it will not interpose between the property owner and the fiscal officers where the law then or thereafter affords him adequate redress. But stating it conversely, where the law then or thereafter does not afford the owner adequate redress, equity will interpose for the protection of his property rights. While this is the rule, the reason is not alone because equity will not interpose where legal redress is sufficient, but it is additionally, because where, as is usual, the complaint against the tax is a complaint, not against the right of the taxing power to tax, but is addressed to asserted irregularities or illegalities in the ministerial and executive processes fixing the lien upon the property; where in short, there is an equitable duty to pay some tax, courts have shown a very proper reluctance to come to the relief of an individual and enjoin the collection of the tax as a whole to the great disturbance of the revenues. Therefore, equity, in effect, has said to such a petitioner: find your relief at law, for the law usually affords adequate relief in such cases. The usual forms of such relief accorded by statutes are the right of recovery back after payment under protest, or the right to sue the vendee at the tax sale, thus quieting title and removing the lien. The supreme court of the United States (*Union Pacific Ry. Co.* v. *Cheyenne,* 113 U. S. 516, [28 L. Ed. 1098, 5 Sup. Ct. Rep. 601]), upon this subject declares: "Judge Cooley fairly sums up the law on this subject as follows: 'To entitle a party to relief in equity against an illegal tax, he must by his bill bring his case under some acknowledged head of equity jurisdiction. The illegality of the tax alone, or the threat to sell property for its satisfaction, cannot of themselves furnish any ground for equitable interposition. In ordinary cases a party must find his remedy in the courts of law, and it is not to be supposed he will fail to find one adequate to his proper relief. Cases of fraud, accident or mistake, cases of cloud upon the title to one's property, and cases where one is threatened with irremediable mischief, may demand other remedies than those the common law can give, and these, in proper

cases, may be afforded in courts of equity.' ''   (3 Cooley on
Taxation, sec. 2, pp. 1414, 1447, 1453.)   And in that same
case, in giving further instances of the inadequacy of legal
relief, it is said: ''For example, if the legal remedy consisted
only of an action to recover back the money after it has been
collected by distress and sale of the taxpayer's lands, the loss
of his freehold by means of a tax-sale would be a mischief
hard to be remedied.   Even the cloud cast upon his title by
a tax under which such a sale could be made, would be a
grievance which would entitle him to go into a court of equity
for relief.''

What thus constitutes a cloud and in what cases equity
will lend its aid was early laid down in this state in *Pixley*
v. *Huggins,* 15 Cal. 127, and Mr. Justice Field's language in
that case has become the accepted doctrine of the courts.   Dis-
cussing the situations under which equity will assert jurisdic-
tion, he says: ''As the property vested by the deed of Au-
gust, 1852, no interest would have passed to the purchaser
under the sale advertised upon the execution issued upon the
judgment of Huggins and Hall.   But it does not follow as
the counsel of the defendants insist, that the plaintiff was not
entitled to the equitable interposition of the court to prevent
the sale.   The jurisdiction of the court to enjoin a sale of real
estate is co-extensive with its jurisdiction to set aside and
order to be canceled a deed of such property.   It is not
necessary for its assertion in the latter case that the deed
should be operative, if suffered to remain uncanceled, to pass
the title, or that the defense to the deed should rest in ex-
trinsic evidence, liable to loss, or be available only in equity.
It is sufficient to call into exercise the jurisdiction of the
court, that the deed casts a cloud over the title of the plain-
tiff.   As in such case the court will remove the cloud, by
directing a cancellation of the deed, so it will interfere to
prevent a sale, from which a conveyance creating such cloud
must result.''   As to what constitutes a cloud he further
declares:   ''The true test, as we conceive, by which the
question, whether a deed would cast a cloud upon the title
of the plaintiff, may be determined, is this:   Would the
owner of the property, in an action of ejectment brought by
the adverse party, founded upon the deed, be required to
offer evidence to defeat a recovery.   If such proof would be

necessary, the cloud would exist; if the proof would be unnecessary, no shade would be cast by the presence of the deed. If the action would fall of its own weight, without proof in rebuttal, no occasion could arise for the equitable interposition of the court; as in the case of a deed void upon its face, or which was the result of proceedings void upon their face, requiring no extrinsic evidence to disclose their illegality.''

It is important to notice in this connection that a title not deducible of record is clouded and unmerchantable. (*Title etc. Restoration Co.* v. *Kerrigan,* 150 Cal. 289, [119 Am. St. Rep. 199, 11 Ann. Cas. 465, 8 L. R. A. (N. S.) 682, 88 Pac. 356].) As is so well said by Mr. Justice Field in the quotation above made that whenever ''the defense to a deed must rest in extrinsic evidence'' a cloud is cast upon the title which equity may be invoked to remove, so we find in *Woodruff* v. *Perry,* 103 Cal. 611, [37 Pac. 526], an injunction granted to restrain the enforcement of an illegal assessment, this court saying that ''inasmuch as the invalidity of such assessment would not appear upon the face of the deed given to the purchaser at the sale . . . the plaintiffs are entitled to the injunction given.'' To the same effect are *Bolton* v. *Gilleran,* 105 Cal. 244, [45 Am. St. Rep. 33, 38 Pac. 881]; *Chase* v. *Treasurer of Los Angeles,* 122 Cal. 540, [55 Pac. 414].

It necessarily results, therefore, that each of these cases in which an injunction is sought must rest for its determination on its own peculiar facts. Under the facts in *Crocker* v. *Scott,* which was an action to enjoin the tax-collector, it was held, and properly held, that neither the certificate of sale nor any acts of the tax-collector constituted even *prima facie* evidence as to the validity of the assessment or levy ''and the taxpayer has a full and complete protection against the creation of any cloud upon his title in enjoining *execution of the deed.* Under such circumstances equity will not interpose to the extent of preventing the performance of those preliminary acts which cannot affect the rights of a taxpayer and the failure to perform which may result in prejudice to the state in the enforcement of its revenue laws.''

In the last sentence of the last quotation there is a distinct declaration of the equitable consideration to which we have previously adverted,—namely, the disturbance of the

fiscal system by the granting of such injunctions in any case and the refusal of equity to do so excepting in a clear case. But this is a clear case. Here is a tax, the lien of which clearly casts a cloud upon plaintiff's property. As in *Woodruff* v. *Perry*, the deed would not show that the assessment was void, and the equitable consideration of a disturbance of revenues is entirely absent in that this is an assessment, not by an authorized power which has irregularly exercised its power, but is an assessment by a school district acting absolutely without jurisdiction and authority. There can be no interference, therefore, with the just revenues of this district in enjoining it from the collection of the tax against one individual since in no sense has it the right to collect such tax from any individual owning land in the affected district. And, moreover, it is well settled that where the assessment is of property not subject to the particular tax or where the persons exacting it are without authority in the premises as here, and where they are seeking to exercise authority over lands not within their corporate jurisdiction, equity will raise its restraining hand. (*Leach* v. *Port of Tillamook*, 62 Or. 342, [124 Pac. 642].)

For these reasons the judgment appealed from is affirmed.

Angellotti, J., Melvin, J., Shaw, J., Lorigan, J., and Sloss, J., concurred.