[S. F. No. 3440. In Bank.—February 18, 1904.]

THE BANK OF CALIFORNIA, Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Respondent.

TAXATION—ASSESSMENT—FRANCHISE TO BE A CORPORATION.—A franchise merely to be a corporation under the laws of this state is a valuable right, distinct from any other property or franchises owned by the corporation, which is the subject of taxation and assessment to the corporation itself by name, and not to its members, who do not hold the right to be a corporation severally as individuals, but only in their collective capacity as a body politic, by the name specified in their certificate of incorporation.

ID.—ASSESSMENT OF CORPORATE FRANCHISE AS "PROPERTY."—The franchise to be a corporation is "property," and the legislature has power

to provide for its assessment as such; and the power of the state to impose such tax as an excise tax does not exclude the taxation thereof in a proper case by a valuation thereof as property by the assessors.

ID.—MODE OF ASSESSMENT—DEDUCTION OF TANGIBLE PROPERTY FROM MARKET VALUE OF SHARES—PERCENTAGE.—The fact that the assessor made the assessment of the franchise of a banking corporation by deducting the tangible property of the corporation from the market value of its shares, and taking a fraction over twenty-five per cent of the difference as the value of the franchise, does not show an unjust valuation, nor include such elements as dividend- or profit-earning power, or good-will. The assessor had the right to take into consideration the value of the shares in determining the value of the franchise. If he erred in his judgment, the remedy was by application to the board of equalization, and the court will not revise the valuation.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

James M. Allen, and John Garber, for Appellant.

Franklin K. Lane, City Attorney, and W. I. Brobeck, Assistant City Attorney, for Respondent.

ANGELLOTTI, J.—This action was brought by plaintiff corporation to have an assessment of its franchise for the fiscal year ending June 30, 1901, declared illegal and void, and to recover from defendant $12,187.76, paid by it under protest, as taxes thereon.

Defendant had judgment in the court below, and plaintiff appeals therefrom on the judgment-roll.

The claim of the plaintiff is, that it has never owned or possessed any franchise whatever, and that the only franchise in any way connected with it is the corporate franchise, or the franchise of being a corporation, which, it is claimed, is the property of its stockholders, and is not assessable or taxable to said corporation. The assessor of defendant, in addition to assessing the assessable tangible property of the plaintiff, situate in said city and county, consisting of land, improvements, furniture, library, typewriter, and money at $2,311,774, assessed its "franchise" at $750,000, and the board

of equalization of the city and county refused to lower said assessment or "give plaintiff any relief whatever." The tax on said $750,000 so assessed on the franchise amounted to $12,187.76, which was paid under protest.

It appears from the findings of the trial court that the plaintiff was incorporated in the year 1864, under the provisions of the act providing for the formation of corporations for certain purposes, approved April 14, 1853, and all acts amendatory thereof and supplementary thereto, for the purpose of carrying on the business of banking, and has ever since conducted such business under its articles of incorporation, and that it has never owned, possessed, claimed, or controlled any other rights, powers, privileges, or franchises than such as were acquired or conferred upon it by said articles of incorporation.

It further appears that the assessor found that the aggregate value of the tangible property of plaintiff, including non-assessable bonds and property not assessable in San Francisco, and all property assessable therein, was $5,156,903.08; that the aggregate market value of all the shares of capital stock issued by plaintiff was $8,100,000; and that the difference between the aggregate market value of said stock and the value of all tangible property of the corporation—to wit, $2,943,096.92—was by him ascertained and determined to be the value of the so-called franchise of plaintiff, which he thereupon assessed and valued, for purposes of assessment and taxation, at the sum of $750,000.

The only franchise acquired under the articles of incorporation—and the findings in this case establish the fact that the corporation has no other franchise—was the right to be and exist as a corporation, with all the powers given by law to corporations, and the right to enjoy the privilege and immunities of a corporation in the conduct of the business of banking.

Admittedly, the mere right to do a banking business is not a franchise, in any sense of the word. It belongs to citizens generally, and is a common right, in the same sense that the right to do a grocery or dry-goods business is available to all citizens, and no grant from the sovereign is essential to its existence. Any individual, or any number of individuals, may, under such regulations as the state in the exercise of its

police powers may legally make, engage therein, without any grant from the state.

While, however, the right to engage in the business of banking is a common right, available to all citizens, such right can be exercised *through the agency of a corporation* only by express permission of the state. Corporations, being purely creatures of the law, may be formed only when the state so authorizes, and then only for such purposes as may be authorized by the state. It is universally recognized that the power of creating corporations is one appertaining to sovereignty, and can only be exercised by that branch of the government in which it is legally vested, and that whatever method may be adopted for their formation, and with whatever liberality the privilege of forming them may be conferred, every corporation is dependent for its existence upon the permission of the state in which it is created.

While our law provides that private corporations may be formed by any five or more persons, a majority of whom are residents of the state, for any purpose for which individuals may lawfully associate themselves, each corporation so created derives its right to exist as a corporation, with all the incidents thereof, for the purpose of doing the business specified in its articles of incorporation, directly from the sovereign power, precisely the same as the corporation that formerly existed in England under special grant from the king, and later under special act of parliament, or the corporation that in this country exists under special act of the legislative department of any of our states.

Whenever a corporation is legally formed, the right to be and exist as such, and as a corporation to do the business specified in its articles, whether it be a banking business, grocery business, or the operation of a railroad, or any other business in which individuals may engage without grant from the state, is a grant by the sovereign power, a valuable right which is generally known as the corporate franchise. (2 Morawetz on Corporations, sec. 922; *Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, 106; *Horn S. M. Co.* v. *New York,* 143 U. S. 305; *Central Pacific R. R. Co.* v. *California,* 162 U. S. 91; *Southern Gum Co.* v. *Laylin,* 66 Ohio St. 578; *State* v. *Anderson,* 90 Wis. 550; *Home Ins. Co.* v. *New York,* 134 U. S. 594, 599; *State R. R. Tax Cases,* 92 U. S. 575.)

In the case of *Horn S. M. Co.* v. *New York,* 143 U. S. 305, the supreme court of the United States, speaking of this kind of franchise, said: ''Its [the corporation's] creation is the investing of two or more persons with the capacity to act as a single individual, with a common name, and the privilege of succession in its members without dissolution and with a limited individual liability. The right and privileges, or the franchise, as it may be termed, of being a corporation, is of great value to its members, and is considered as property separate and distinct from the property which the corporation itself may acquire. According to the law of most states, this franchise or privilege of being a corporation is deemed personal property, and is subject to separate taxation.''

This corporate franchise—viz., the franchise to be and exist as a corporation for the purposes specified in the articles of incorporation—appertains to every corporation, for whatever purpose it may be formed, and there is no distinction in this regard between the banking or grocery corporation, and the railroad, water, or gas corporation. The right to engage in every such business is open to all citizens, independent of any grant from the sovereign, but it is available to no one to conduct any such business through the agency of a corporation without such grant.

Certain occupations are, however, of such a nature that various privileges conferrable only by the sovereign power are convenient, and in most cases absolutely essential, to the successful maintenance of the business to be carried on, whether it be carried on by a corporation or by an individual,—such, for instance, as the right to use public highways. Such rights and privileges are also known as franchises, but they constitute a class entirely distinct from and independent of the corporate franchise. Such rights and privileges are of course the property of the corporation or individual by whom they have been acquired, and are taxable as such.

As already shown, the corporate franchise is considered as property separate and distinct from the so-called franchises which the corporation may acquire subsequent to its incorporation.

The plaintiff claims that because it has acquired and is exercising no such rights it has no franchise. The basis of this claim is the contention that this corporate franchise is not a

franchise of the corporation, but vests in and belongs to the members of the corporation. In a certain sense it is true that such a franchise is the property of the members of the corporation. It has been often said that a corporation is itself a franchise belonging to the members of the corporation, and a corporation may hold other franchises as rights or franchises of the corporation. Expressions of this character have been used for the purpose of distinguishing the rights and privileges which the corporation, as a legal being, subsequently acquires and controls, and which, when transferable, may be transferred by the corporation itself, from the franchise of being and existing as a corporation, which is incapable of assignment, and which survives "in the mere fact of corporate existence" after all property capable of assignment has been transferred to others by the corporation.

The corporation is, however, nothing other than its stockholders or members, transformed into and existing as one legal being by permission of the state. The incorporators and their associates and successors are the "body politic or corporate by the name stated in the certificate" (Civ. Code, sec. 296), and, as such body politic or corporate, they hold the right to exist and transact the business specified in the articles. They hold the right in their collective capacity as a corporation, and not severally as persons. They have no rights in regard to the corporate franchise that they can exercise, except through the corporation. It is the corporation, the "body politic or corporate," the legal creature comprised of the incorporators, their associates, and successors, that is invested by the state with life and the power to do.

It was said by the supreme court of the United States, in *Society for Savings* v. *Coite*, 6 Wall. 594, 606: "Corporate franchises are legal entities vested in the corporation itself as soon as it is *in esse*. They are not mere naked powers granted to the corporation, but powers coupled with an interest which vest in the corporation, upon the possession of its franchises, and whatever may be thought of the corporators, it cannot be denied that the corporation itself has a legal interest in such franchises."

If this corporate franchise is assessable as property, then, that it must be assessed to the corporation instead of the members or stockholders is clearly settled in this state by the de-

cision in *People* v. *Badlam,* 57 Cal. 594, where it was held that a stockholder could not be assessed upon his certificate of stock, inasmuch as his shares were simply an interest in the very property held by the corporation, and the assessment of all the property of the corporation covered everything represented by the certificate. (See, also, Pol. Code, sec. 3608.)

It *is* not claimed that a corporate franchise may not be taxed by a state, but it is urged that such tax has always been an excise tax, and not a tax on property. An examination of the authorities will disclose the fact that in many cases it has been directly taxed as property. The manner and method, however, are entirely within the control of the state, which is supreme in such matters, so long as no constitutional right is impaired. As already shown, such a franchise is property. Mr. Justice Field, speaking for the supreme court of the United States, in *Horn S. M. Co.* v. *New York,* 143 U. S. 325, after saying that such a franchise is property and is subject to separate taxation, said: ''The right of the state to thus tax it has been recognized by this court and the state courts in instances without number, . . . and the manner in which its value shall be assessed and the rate . . . are mere matters of legislative discretion, except as controlled by the organic law of the state.'' The same court said in *Hamilton Co.* v. *Massachusetts,* 6 Wall. 632, 638, that ''Corporate franchises . . . are legal estates, and not mere naked powers granted to the corporation, but powers coupled with an interest which vest in the corporation, by virtue of their charter, and the rule is equally well settled that the privileges and franchises of a private corporation, unless exempted in terms which amount to a contract, are as much the legitimate subjects of taxation as any other property of the citizens within the sovereignty of the state.'' (See, also, *Society for Savings* v. *Coite,* 6 Wall. 594, 606.)

In *Central Pacific R. R. Co.* v. *California,* 162 U. S. 91, 125, the supreme court of the United States, speaking of a tax on the state franchise of a railroad corporation, said that if the corporation procured any rights or privileges, otherwise called franchises, from the state, they were taxable, and the extent of their value was to be determined by the board of equalization. The court, after saying that under the laws of California the plaintiff obtained from the state the right and

privilege of corporate capacity and other rights, said that it is not to be denied that such rights and privileges have value and constitute taxable property.

In *State* v. *Anderson,* 90 Wis. 550, 560, the supreme court of Wisconsin, after saying that the franchises of the Milwaukee Street Railway Company, whether of existence or for the operation of its track, are beyond dispute the property of the corporation, and assessable as such, said the method of taxation in that state being upon the valuation of property taxed, and the state not providing for a certain specific tax on franchises like an excise rate, that they should be regarded as personal estate for purposes of taxation in the district in which the corporation had its principal place of business, and that the proper officers should fix the value. (See cases cited in opinion in that case.) Mr. Cooley says in his work on Taxation (3d ed., p. 686): "In some states all taxation, as far as possible, is brought to an *ad valorem* standard. Franchises are property, and in such states may be taxed by a valuation, being estimated for the purpose either separately or as a part of the aggregate corporate capacity."

The Ohio, Indiana, and Kentucky methods of taxation upheld by the court (see *State* v. *Jones,* 51 Ohio St. 492; *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 194; 166 U. S. 185; *Adams Express Co.* v. *Kentucky,* 166 U. S. 171; *Adams Express Co.* v. *Indiana,* 165 U. S. 255), while contemplating the assessment of all the property of certain kinds of corporations tangible and intangible, as an entirety, necessarily involved therein the inclusion of the corporate franchise as a part of the property of the corporation. (See, also, *State R. R. Co. Tax Cases,* 92 U. S. 575; *Ottawa Glass Co.* v. *McCaleb,* 81 Ill. 556.) The case of the *Louisville Tobacco Warehouse Co.* v. *Commissioners,* 106 Ky. 165, relied on by plaintiff, was decided by a bare majority of the supreme court of Kentucky upon a statute specifically naming many kinds of corporations, including banking corporations, as liable to a property tax on the corporate franchise, and declaring "every other like corporation" liable to the same tax, and also every corporation, company, or association having or exercising any special or exclusive privilege or franchise; and it was simply held that a mere private business corporation of a kind not specifically named, and having no special or exclusive

privilege or franchise not allowed by law to natural persons, was not intended to be included by the statute.

In several cases where it was said that the tax upon a corporate franchise could be sustained only upon the ground that it was an excise tax, the tax would have been invalid as a property tax solely for the reason that it was in effect levied on property exempt from state taxation under the laws of the United States. (See *Home Ins. Co.* v. *New York*, 134 U. S. 594, 597 et seq.)

The power of a state to impose a tax on the franchise of a corporation, in the nature of an excise or duty, does not, however, exclude the taxation, in a proper case, by a valuation made by the assessor. (*Spring Valley Water Works* v. *Schottler*, 62 Cal. 69, 112.)

Under the authorities, there can be no question that a state may provide for the taxation of a corporate franchise as property of the corporation.

It is further contended that a corporate franchise is not a franchise within the meaning of the provisions of our state constitution relating to taxation, and that this state has made no provision authorizing an assessment thereof.

The question thus presented can hardly be said to be a debatable one, in view of certain decisions of this court rendered shortly after our present state constitution went into effect, determining the effect of the provisions of such constitution in the matter of the taxation of property of corporations.

The constitution adopted in 1879, after providing that all property in the state not exempt under the laws of the United States shall be taxed in proportion to its value, declares that the word "property" as used in this connection includes "moneys, credits, bonds, stocks, dues, franchises, and all other matters, and things, real, personal, and mixed, capable of private ownership." (Const. art. XIII, sec. 1.) The legislature thereupon repealed section 3640 of the Political Code, providing for the assessment of shares of stock to the owners thereof, the assessable value thereof to be determined by deducting from the market value of the entire capital stock the value of all property assessed to it and dividing the remainder by the entire number of shares, and added a new section to that code (sec. 3608), in which they declared that

shares of stock in corporations possess no intrinsic value over and above the actual value of the property of the corporation which they represent, that the assessment and taxation of such shares and also of the corporate property would be double taxation, that all property belonging to corporations shall be assessed and taxed, but that no assessment shall be made of shares of stock. (Amendments to codes, 1881, pp. 56, 59.) Immediately after the enactment of this legislation, the question of the liability of shares of stock in corporations to assessment to the holders thereof came before this court. It was held that the language of the constitution clearly forbade double taxation; that the legislature had the right thereunder to say that all the property of the corporation should be assessed to the corporation, and the same property should not again be assessed for the same tax; that the "property" of the corporation included its franchise and everything else evidenced by the certificates of stock; that while the share of each stockholder was undoubtedly property, it was an interest in the very property held by the corporation, and nothing more; and that when all the property of the corporation, including its franchise, was assessed, which it was to be presumed would be done by the assessor in obedience to the requirements of the law, any further assessment of the shares to the individual stockholders would be double taxation. (*People* v. *Badlam,* 57 Cal. 594.) This case necessarily involved the question as to the constitutionality of section 3608 of the Political Code, prohibiting the assessment of shares of stock to the holders thereof. Such shares being undoubtedly property, unless they were otherwise assessed, the section was clearly unconstitutional, in view of the provision of the constitution requiring *all* property to be taxed. According to the decision of the court they were under the law to be otherwise assessed—i. e. everything represented by the certificates was to be assessed to the corporation. (See, also, *San Francisco* v. *Mackey,* 3 West Coast Rep. 697.)

In the later case of *Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, 117, this court, speaking of the repeal of section 3640 of the Political Code, and the enactment of section 3608 of the Political Code, already noticed, after stating that under the scheme provided by section 3640 the whole property of the corporation, including franchise, would have

been taxed by the taxation of the shares to the owner in the manner indicated therein, said that by the repeal of such section and the enactment of section 3608 it was without doubt the intention of the legislature that everything entering into and giving value to the shares should be taxed as property of the corporation.

This case involved the question as to the validity of the action of the board of supervisors of San Francisco, sitting as a board of equalization, raising the assessment of the franchise of the plaintiff from five thousand dollars to five million dollars. It appeared from the record in the case that the supervisors held the difference between the value of the tangible property of the corporation and the aggregate market value of the shares of stock in the company to be the value of the franchise. Practically every objection made to the assessment here involved was made in that case by eminent attorneys representing various corporations, including this plaintiff. The opinion of the court, signed by all of the six justices who participated in the case, overruling each of the objections, has been, so far as the records of this court show, accepted up to this time as a correct exposition of the law of California relative to the taxation of franchises of corporations.

While the plaintiff in that case possessed the right to lay down pipes in the streets, alleys, and ways of a city, and to collect rates for water furnished, which were said to be franchises, it was in terms declared by the court that its existence and right to employ its corporate powers is a franchise, and the court said in regard thereto: "We have no doubt that it was the intention of those who framed and ratified the constitution to place such franchises in the category of property to be taxed. . . . To hold that a private corporation does not own its franchise right, power, and privileges would be both novel and untenable. . . . The franchise of a corporation is and can be well defined to be the right of the corporation to exist and exercise the powers and privileges vested in it by its charter. . . . From the foregoing cases, it would seem that there can be no doubt of the power of a state to tax the franchise at its assessed value." Commenting on the decision in *People* v. *Badlam*, 57 Cal. 594, the court said that in that case it was held that the franchise of a

corporation of the character of those named in the petition therein, which included a banking company, a gas-light company, a smelting and lead company, and a water company, is taxable property of the corporation. It was further declared that the tax must be according to the valuation made by the officer appointed for that purpose, subject to equalization by the board of equalization. The method of determining the value of the franchises there employed was declared by the court to have been held to be within the powers of the assessor in *San Jose Gas Co.* v. *January,* 57 Cal. 614, and impliedly approved as a correct mode in *People* v. *Badlam,* 57 Cal. 594. (See, also, *Spring Valley Water Works* v. *Barber,* 99 Cal. 36; *San Jose Gas Co.* v. *January,* 57 Cal. 614; *London etc. Bank* v. *Block,* 117 Fed. 900.)

It is sought to distinguish the case at bar from those of the *Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, 112; *Spring Valley Water Works* v. *Barber,* 99 Cal. 36; and *San Jose Gas Co.* v. *January,* 57 Cal. 614, upon the ground that in each of the cases cited other franchises were possessed by the corporations, the waterworks having and exercising the right to lay pipes in the streets, ways, and alleys of the city, and to collect rates for water furnished, and the gas company having and exercising the right to use the streets and lay pipes therein for supplying a city with gas.

The distinction is in no way material to the controversy here. As already shown, it was definitely determined in *Spring Valley Water Works* v. *Schottler,* that whatever other franchises the water corporation possessed, its existence and right to employ its corporate powers was a franchise, constituting taxable property. Aside from this, however, the other rights possessed by the waterworks and gas company were rights granted by express provisions of the constitution to every individual in the state and to every company incorporated under the laws of the state for the purpose of supplying any municipality and its inhabitants with water or artificial light. (Const., arts. XI (sec. 19), XIV). While the generality of the grant does not deprive such rights of the character of franchises, they have value only so far as the exercise thereof contributes to the value of the capital of the corporation, and are precisely the same in this respect as the exercise of the corporate franchise. As was aptly said of such

other rights or franchises by counsel in *Spring Valley Water Works* v. *Schottler,* no one can sell them, for everybody has them, and no person can gain by the accession of such rights of others.

It is urged that the assessment on the corporate franchise is in this case grossly unjust as to amount, that the assessor's method of arriving at such valuation is improper and unjust, and that it includes such elements as dividends or profits, earning power, and good-will. The assessed value of the franchise, it will be observed, is a fraction over twenty-five per cent of the total value of the intangible property of the cor-poration, ascertained by a deduction of the value of the tangible property from the market value of the shares of stock.

The value of the franchises of a corporation is not limited by the cost of obtaining them. If it were so limited, such franchises as the right to use the public streets for water-pipes or gas-pipes, for the purpose of supplying a municipality and its inhabitants with water or gas, would be valueless and unassessable, for everybody possesses such rights under the terms of our constitution. It is the exercise of the right that gives the value that our laws require to be taxed. As was said in *San Jose Gas Co.* v. *January,* 57 Cal. 614, 616, "In a pecuniary sense, the value of franchises may be as various as the objects for which they exist and the methods by which they are employed, and may change with every moment of time; but that franchises are property, and are to be taxed in some method in proportion to value, is a part of the para-mount law of this state." In the same case, it was said by the court, speaking of the method employed by the assessor in arriving at the valuation of certain mains: "The duty of making the valuation was cast upon the assessor. The method of arriving at the valuation, the process by which his mind reached the conclusion [in case where, as here, it is not pre-tended that he acted fraudulently or dishonestly], is matter committed to his determination. . . . If he erred in his judgment, the remedy was by application to the board of equalization, and the courts will not revise the judgment of these officers upon such questions." This appears to be de-terminative of the contention here made. While the com-plaint herein alleged fraudulent motives on the part of the

assessor, the allegation was denied, and no finding was made therein—and no point is made as to the failure of the court to make such finding. Whether or not the whole difference between the aggregate market value of the shares of stock and the value of the tangible property—viz., $2,943,096.92—was the value of the franchise, the assessor certainly had the right to take the value of the shares into consideration in determining the value of the franchise; and were we at liberty to review the judgment of the assessor and of the board of equalization upon those matters, we could not say that an assessment of $750,000 thereon is unjust, or that it includes such elements as dividend- or profit-earning power, or good-will, which, it is claimed, should not be taken into consideration in determining the value of the property of the corporation. In this connection, it will be observed that these elements, so far as they may enter into the value of shares of stock, would be included in an assessment of such shares to the stockholders, a method of assessment which the state is at liberty to adopt,—in fact bound to adopt,—unless such shares are otherwise covered by the assessment of the property of the corporation.

It is clear that if the laws of this state properly express the intention that everything that gives value to the shares of a corporation shall be assessed as property of the corporation, the true value of those shares is a most important element in determining the value of such property.

Finally, it is urged that the assessment is in violation of the fourteenth amendment of the constitution of the United States, in that a corporation is thereby compelled to pay a tax of $12,187.76 for carrying on a "common business, banking, that every one has a right to carry on," while any person or partnership may carry on the same business without paying any tax.

If this contention be well founded, it of course follows that no tax whatever can be imposed by any state on the corporate franchise of any corporation which is engaged in a business open to all who choose to engage therein. In view of the many decisions of the United States supreme court already cited, upholding the taxation by states of corporate franchises, it would appear unnecessary to further discuss this claim. As

was said by the learned circuit judge in *London etc. Bank* v. *Block*, 117 Fed. 900, in upholding an assessment on such a corporate franchise, "The assessment is not . . . upon the business or occupation of a banker, but upon the property of complainant embraced in the unity of the franchise of the corporation to have perpetual succession, to have a common seal, and to act in all its business transactions of a general banking-house with those special advantages which are incident to corporate existence." A person or partnership engaged in the same business has no such property.

The judgment of the superior court is affirmed.

Shaw, J., Van Dyke, J., and Lorigan, J., concurred.

McFARLAND, J., dissenting.—I dissent, and at some future time, if other duties permit, will express my views on the question here involved more fully. At present I will say only this: the only assessment actually made was of appellant's "franchise." This attempted assessment was under any view void for want of description. If there be any particular property embraced under the general category "franchise" which is assessable, such particular property must be described in some manner sufficient to identify it. The mere word "franchise" is no more descriptive of any particular property than would be the words "an easement" or "a piece of land." 2. It appears, however, that the only franchise of appellant intended to be assessed was its mere franchise to be a corporation. But such a franchise, assuming it to belong to the corporation, and not to the stockholders, is not assessable, because it has no ascertainable value under the rule prescribed by the state constitution and the statute for determining assessable value. (Const., art. XIII, sec. 1; Pol. Code, sec. 3617.) It cannot be transferred by the owner, nor seized and sold under execution or other process of law, and is not in any way vendible. In this respect it cannot be distinguished from a "seat" in a stock board, which was held in *Lowenberg* v. *Greenebaum*, 99 Cal. 162,[1] not to be property in the sense that it could be seized and sold. 3. The assessor reached the conclusion that this franchise was of the value of $750,000, at which amount he assessed it, by the process of

[1] 37 Am. St. Rep. 47.

deducting the total value at which all the tangible property of the appellant had been assessed from the value of all the shares of its capital stock as shown by sales thereof in the market. This was not fixing the value of the only franchise attempted to be assessed—to wit, the right to be a corporation; it was merely an attempt to assess the good-will of the appellant as a business concern, and was an unlawful discrimination against the appellant and in favor of partnerships, individuals, and all other "persons," whose tangible property alone is assessed, and not the good-will of their established business. The value of the franchise to be a corporation is not affected by the fact that the corporation afterwards does a successful or unsuccessful business.

BEATTY, C. J., dissenting.—I agree with Justice McFarland that the mere franchise to be a banking corporation is not susceptible of valuation according to the criterion of value established by the statute. (Pol. Code, sec. 3617, subd. 5.) It is not transferable or vendible any more than a broker's seat in the stock and exchange board; and unless we are prepared to overrule the decision in *San Francisco* v. *Anderson,* 103 Cal. 70,[1] and at the same time to pronounce the code definition of value unconstitutional, I cannot see how the judgment in this case can be affirmed. The invalidity of the assessment of appellant's franchise is to my mind much clearer than that of the broker's seat, for it was made to appear in the case cited that the privileges attaching to a seat in the stock board were of considerable pecuniary value to the member, whereas there is nothing to show that the right to conduct the banking business is of any greater value to a corporation than to a copartnership, and in case of a partnership it is not regarded as having any value whatever. The truth is, that when, as in this case, a valuation of a franchise of a banking or trading corporation is made by taking the whole or a part of the difference between the market value of its shares and the value of its tangible assets, such valuation necessarily includes, and is mainly, if not wholly, composed of, the value of the good-will of the business, and the franchise has little or nothing to do with it. Whether the good-will of a business is subject to taxation or not is a question

[1] 42 Am. St. Rep. 98.

never decided by this court; but conceding it to be property liable to taxation, I am clear that it should be assessed *eo nomine,* and assessed equally to all persons, natural and artificial. If it be true, as contended by appellant, that good-will is never assessed to natural persons, it is an unjust discrimination to assess it to corporations merely because the market price of their shares affords a means of estimating its value. Upon the grounds thus briefly indicated, I dissent from the judgment.

Rehearing denied.

Beatty, C. J., McFarland, J., and Henshaw, J., dissented from the order denying a rehearing.