[S. F. No. 4997. In Bank.—October 8, 1908.]

## THE BOCA MILL COMPANY, Petitioner, v. CHARLES F. CURRY, as Secretary of State of the State of California, Respondent.

EXTENSION OF CORPORATE EXISTENCE—CONSTITUTIONAL LAW—LEGISLATURE CANNOT EXTEND OR AUTHORIZE CORPORATIONS TO EXTEND.— Section 7 of article XII of the constitution of 1879, providing that "the legislature shall not extend any franchise or charter, nor remit the forfeiture of any franchise or charter, of any corporation now existing, or which shall hereafter exist, under the laws of. this state," prohibits the legislature not only from enacting any law, general or special, extending the term of existence of any or all corporations, but also from enacting any general law under which corporations may themselves extend such period.

ID.—ACT OF MARCH 17, 1907, UNCONSTITUTIONAL.—The Act of March 17, 1907, purporting to amend section 401 of the Civil Code (Stats. 1907, p. 344), so as to permit corporations theretofore or thereafter formed and existing under the laws of the state, at any time prior to the expiration of the term of its corporate existence, to extend such term to a period not exceeding fifty years from the date of such extension, is in conflict with section 7 of article XII of the constitution, and therefore invalid.

ID.—CORPORATION SOLELY CREATURE OF LEGISLATURE.—A corporation is purely a creature of the law and can exist only by permission of the state, and the legislative department of the state government is the only department empowered to form corporations or authorize their formation, or prescribe or extend their term of existence, and, except in so far as it is limited by constitutional provision, the power of the legislature in this regard is absolute.

ID.—EXTENSION NOT AUTHORIZED BY SECTION 1 OF ARTICLE XII OF CONSTITUTION.—Section 1 of article XII of the constitution, besides prohibiting the formation of corporations by special law and declaring that they may be formed under general laws, does no more than to expressly reserve the power to the legislature, in general terms, to alter or repeal any law then in force or thereafter enacted concerning corporations. It does not authorize the legislature to enact general laws under which corporations might extend their own charters.

ID.—CONSTITUTION HOW CONSTRUED.—If the language used in a constitutional provision plainly and unequivocally shows a certain and definite purpose to be accomplished thereby, it is the duty of the courts to so construe it as to carry that purpose into effect.

APPLICATION for a Writ of Mandate directed to the Secretary of State of the State of California.

The facts are stated in the opinion of the court.

John Garber, Garret W. McEnerney, J. J. Dwyer, Tobin & Tobin, and James M. Allen, for Petitioner.

T. C. Coogan, Jas. T. O'Connor, and W. H. Orrick, *Amici Curiæ*.

U. S. Webb, Attorney-General, for Respondent.

ANGELLOTTI, J.—This is an original proceeding instituted in this court by plaintiff, a California corporation, to obtain a writ of mandate requiring the defendant to file in his office a certified copy of a certificate of extension of its corporate existence.

The question presented by this proceeding is as to the constitutionality of an act of the legislature, approved March 18, 1907, purporting to amend section 401 of the Civil Code (Stats. 1907, p. 344), by the terms of which amendment "every corporation heretofore or hereafter formed, and existing under the laws of this state, may at any time prior to the expiration of the term of its corporate existence extend such term to a period not exceeding fifty years *from the date of such extension.*" Prior to the amendment, and ever since the year 1873, the section provided that any corporation formed for a period of less than fifty years, the maximum period under our statute for which a corporation may be originally organized, might extend its term of existence to a period not exceeding fifty years *from its formation.* The amended section provides, as did the original, that such extension may be made at any meeting of the stockholders or members called by the directors expressly for considering the subject if voted by stockholders representing two thirds of the capital stock, or by two thirds of the members, or upon the written assent of two thirds of the members or of stockholders representing two thirds of the capital stock. A certificate of the proceedings of the meeting upon such vote, or upon such assent, must be signed by the chairman and secretary of the meeting and a majority of the directors, and be filed in the office of the county clerk where the original articles of incorporation were filed, and a certified copy thereof in the office of the secretary of state, and thereupon the term of the corporation

is extended for the specified period. The plaintiff was incorporated on the fifth day of June, 1877, for the maximum term of fifty years. In October, 1907, it was resolved, in the manner provided by the amended section, to extend the term of its corporate existence for the further period of fifty years from the date of extension. All the proceedings were in accord with the provisions of said section. The secretary of state refused to file the certified copy of the certificate of extension upon the ground that section 401 as so amended is in violation of a provision of our constitution, and thereupon this proceeding was instituted.

It will be observed that the amendment to section 401 of the Civil Code made a radical change in the law. As the section stood before the amendment, only a corporation formed for a period of less than fifty years could extend its term of existence, and then only to a date not exceeding fifty years from the date of its original incorporation. Under the amendment, any corporation may extend its term of existence, although originally incorporated for the full term of fifty years, not exceeding fifty years from the date of such extension.

The claim of the defendant is that the amendatory act is invalid because it is prohibited by section 7 of article XII of our constitution, the article relating to corporations. That section is as follows: "The legislature shall not extend any franchise or charter, nor remit the forfeiture of any franchise or charter, of any corporation now existing, or which shall hereafter exist, under the laws of this state." The question here is as to the meaning of this provision. The defendant contends that it prohibits the legislature not only from enacting any law, general or special, extending the term of existence of any or all corporations, but also from enacting any general law under which corporations may themselves extend such period. The claim of plaintiff is that the provision is intended simply either to prohibit such an extension by legislation special in its character, or to prevent the legislature from passing any general law which, by the operation of the law itself, independent of action by any one else, will accomplish the extension of corporate charters; in other words that the constitutional restriction is upon the method of accomplishing such an extension, and is not directed against the substantive thing, the extension, and that it does not prohibit the enact-

ment of a general law of a permissive character, open to all corporations alike on equal terms.

The constitutional provision under consideration is peculiar to our own state and the states of Washington and Idaho, which evidently copied it from our constitution. At the time of its adoption, the constitutions of Pennsylvania, Missouri, and Colorado contained provisions in terms prohibiting the passing by the legislature of special laws creating corporations or renewing or extending the charters thereof, and the constitutions of Illinois and Nebraska declared that no corporation, except those organized for charitable, educational, penal, or reformatory purposes and under the control of the state, shall be created by special laws or its charter extended, changed or amended, which was practically the same as the provision of Pennsylvania, Missouri, and Colorado. Since the adoption of our constitution of 1879, the states of Montana and Idaho have adopted constitutional provisions in terms prohibiting the granting, extension, or amendment of corporate charters by special law, and the state of Delaware one prohibiting the creation, amendment, renewal, or revival of any corporation by special act.

In view of all the circumstances proper to be considered in construing a constitutional provision, we are forced to the conclusion that section 7 of article XII is not susceptible of either of the constructions sought to be given it by learned counsel for the plaintiff, and that it was plainly the intent of the framers to prohibit any action by the legislative department, by virtue of which any corporate charter or any franchise (at least any franchise held by a corporation) might be extended, or the forfeiture of any such charter or franchise remitted.

So far as the extension of corporate charters is concerned, when we come to a consideration of the evils to be guarded against by constitutional provision in that behalf, it must be conceded that under our system that of special legislation was the one principally to be feared, and, therefore, to be prohibited. We would naturally expect, for this reason, to find more force in an argument that this was the real object of the provision, than in the other claim of plaintiff that its object was to simply prevent the legislature from directly extending the charters of corporations by general legislation, leaving that

body free to authorize all corporations to extend their own period of existence. We are unable to perceive any particular object to be subserved by a provision having the effect asserted in this latter claim of plaintiff. The only suggestion of its learned counsel in this regard is that it may have been the purpose in prohibiting direct extensions by the legislature by general law to guard against the special legislation that might be successfully cloaked thereunder. There is little force in this suggestion. The evil thus referred to is one common to all general legislation, and experience has given rise to more than a suspicion that it is to be found in various statutes enacted by our legislature, general laws in form, and general laws in the sense that the courts can find no valid ground upon which to hold them to be special laws. This evil is as possible in the matter of legislation permitting corporations to extend their own charters, as in the case of legislation directly extending them. It is on the latter claim, however, that plaintiff principally relies, being apparently forced to this position by the weakness of any possible argument that, under the circumstances, can be made in support of the special legislation claim. The constitutional convention of 1879 was evidently firmly set against special legislation of all kinds, and the prohibitions thereof are very numerous. When guarding against the evils supposed by the members to accompany the power of enacting that character of laws, there was no reluctance to use terms showing beyond doubt that a certain method of legislation,—viz., special legislation,—was the only thing prohibited. An examination of the constitution shows many prohibitions of this character. Section 21 of article I declares: "Nor shall any citizen, or class of citizens, be granted privileges or immunities which upon the same terms, shall not be granted to all citizens." Section 25 of article IV provided that the "legislature shall not pass local or special laws in any of the following enumerated cases, that is to say:" and contains thirty-three subdivisions stating the classes of subjects, as to which such laws are not permissible. The nineteenth subdivision was: "Granting to any corporation, association, or individual any special or exclusive right, privilege, or immunity," and the thirty-third subdivision was: "In all other cases where a general law can be made applicable." By sections 3, 4, and 5 of article XI, the legislature was authorized to provide "by

general and uniform laws" for the formation of new counties, and directed to establish a system of county governments, "which shall be uniform throughout the state," and directed to provide "by general and uniform laws" for the election, etc., of officers. Section 6 of article XI declared: "Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide," for their incorporation, etc. Section 1 of article XII provided: "Corporations may be formed under general laws, but shall not be created by special act." Section 5 of article XII provided: "The legislature shall have no power to pass any act granting any charter for banking purposes, but corporations or associations may be formed for such purposes under general laws." These instances are cited to show that when the convention was guarding against special legislation, it did not hesitate to show its purpose by clear and unmistakable language. The provision under consideration is destitute of any word or words from which any such purpose may be inferred, and if it was intended by the framers of the constitution as a prohibition on special legislation, it is, so far as we have found, the one solitary instance among the many prohibitions of legislation of that character, in which they failed to make their purpose clear. "The legislature shall not extend any franchise or charter" is the language used. There is no saving clause to the effect that such charters may be extended under general laws, analogous to that used in section 5 of the same article, nor is it declared, as in the many other instances of such prohibitions, that the legislature shall not do the thing "by local or special law." In addition to this, the debates and proceedings of the constitutional convention show very clearly that all those who made any remarks while the provision was being discussed, both those favoring and those opposed thereto, were of the opinion that the effect thereof would be to place it beyond the power of the legislature to enact any law, general or special, under which the charter or franchise of a corporation might be extended, or the forfeiture of any such franchise or charter remitted, and that such was the intention of those thus advocating it. It may be conceded, as urged by counsel for plaintiff, that our judgment as to the meaning of the provision cannot be influenced by the construction placed upon it by individual members of the convention in the de-

bates. We speak of this expression of views, solely with reference to the subsequent action of the convention in rejecting an amendment offered by Mr. Cross. He proposed that it be amended to read as follows: "The legislature shall not by a special act extend any franchise or charter, or remit the forfeiture of any franchise or charter of any corporation now existing, or which shall hereafter exist, under the laws of this state." The only change proposed by the amendment was the insertion of the words, "by a special act." He said in support of the amendment: "Many corporations exist in this state to-day that are doing business which is beneficial to the state. Now, corporations are organized in the state of California for a period of fifty years. If this provision is adopted as proposed by the committee, whenever that fifty years expires that corporation must dissolve and distribute its property, and wind up its business. Take, for instance, the case of some banking association that is conducting an honorable business. Say its charter expires in twenty years. When its charter expires, there must be a distribution of all its corporate property among the stockholders. Now, pass this provision, and it is absolutely necessary that the corporation shall be wiped out of existence, without any remedy. If we insert this amendment, the legislature can provide by general law that corporations now existing may continue their existence." This amendment was entirely satisfactory to Mr. Wilson, the leader of the opposition to the original provision, he stating that it would be sufficient for the purpose he desired to accomplish. At the close of a discussion in which no one asserted a view contrary to that of Mr. Cross as to the effect of the original provision, the proposed amendment was rejected and the provision was adopted as reported by the committee. (1 Cal. Const. Conv. 1878-9, pp. 431-434.) This action of the convention was most significant under the circumstances. The original provision contained nothing to indicate that its purpose was simply to prohibit special legislation, although in every other case where such was the object, the purpose was clearly indicated. By its terms, it plainly prohibited any kind of legislation extending any franchise or charter. No one disputed the proposition that, as drawn, the provision prohibited general as well as special legislation. The proposed amendment was practically

the same as the language most commonly used in the other cases in which special laws were prohibited, and was substantially the same as the language contained in the provisions on the same subject contained in other state constitutions. In the face of all this, it is unreasonable to conclude, as is suggested by counsel, that the rejection of the amendment may have been for the reason that the members of the convention thought the amendment unnecessary. If they were seeking solely to prevent special legislation, and were willing to allow general legislation accomplishing such extensions, in view of their action in other cases and the manner in which the matter was brought before them, it would have appeared exceedingly necessary to them to have adopted Mr. Cross's amendment, or some substantially similar amendment. That they did not do so indicates very clearly that they were not, by the provision under consideration, simply guarding against special legislation. They evidently intended exactly what appears to us to be the only reasonable construction of the provision—that the legislature should not be allowed by any kind of legislation, general or special, to grant the extensions or remissions described therein.

Coming to a consideration of the second claim made by defendant,—viz., that while the provision under consideration prohibits the legislature from directly extending franchises and charters, or remitting the forfeiture of any franchise or charter of any corporation, it does not prohibit the legislature from enacting a law under which corporations may extend their own charters.

In this consideration we must bear in mind that a corporation is purely a creature of the law and can exist only by permission of the state, that in all of the states of this country the state legislative department is the only department of government empowered to form corporations or authorize their formation, or prescribe or extend their term of existence, and that, except in so far as it is limited by constitutional provision, the power of the legislature in this regard is absolute. As is said by learned counsel for plaintiff, "that power belongs to the legislative body as an attribute of sovereignty, unless it is restricted by the constitution." In Clark & Marshall on Private Corporations (sec. 58) it is said: "Since corporations can be created by or under legislative authority

only, it is only by or under such authority that the charter of
a corporation can be extended beyond the period for which it
was created." (See, also, *Taggart* v. *Perkins*, 73 Mich., 303,
[41 N. W. 426].) In view of this, it being clearly established
that the purpose was not to prohibit special legislation, there
is but one meaning that can be given to the provision under
consideration. As the charter of a corporation may be ex-
tended only when authorized by the state, and as the permis-
sion of the state in this regard can be expressed only through
its legislative department except as it is expressed in the con-
stitution itself, it would appear to necessarily follow that
when the framers of the constitution declared that the legis-
lature shall not extend any charter of any corporation, they
were declaring against the substantive thing, as it is put by
counsel, that is against legislation extending or authorizing
the extension of the charter of any corporation in any way.
When they prohibited the exercise of the power to so extend
by the only body possessing it, and did not provide any other
way by which an extension might be had, they apparently in-
tended to forbid any legislation effecting or authorizing the
extension of corporate life, just as clearly as if they had in
terms said: "The legislature shall have no power to enact any
law extending or authorizing the extension of any charter."
It is urged that section 1 of article XII confers this authority
on the legislature, or recognizes that it has such power, and
that it cannot be said that the power is conferred by one sec-
tion and denied by the other. We do not so understand that
section. Besides prohibiting the formation of corporations by
special law and declaring that they may be formed under gen-
eral laws it does no more than to expressly reserve the power
to the legislature, in general terms, to alter or repeal any law
then in force or thereafter enacted concerning corporations.
The evident purpose of this provision was to make plain the
will of the convention that corporations should have no legal
right to insist that any general law relating to corporations
shall continue in force unchanged because it was in force at
the time of its organization. This general power is, of course,
subject to such prohibitions as to specific matters as are else-
where found in the constitution, and there are many such pro-
hibitions. The nature of the subject-matter of the section
under consideration is such as to fully account for the form

of the prohibition used, and to distinguish the case from the numerous other instances of prohibitions on substantive things contained in the constitution, differing in form from this, which are relied on by counsel, and to make it apparent that it was not intended to leave the legislature free to enact general laws under which corporations might extend their own charters. Any such construction would under the circumstances do violence to the language used. In this connection it is important to note that in other instances where such general laws relative to corporations were intended to be authorized, the framers of the constitution were careful to so state in conjunction with the prohibition otherwise. In section 1 of article XII, prohibiting the creation of corporations by special act, it was in terms declared that "corporations may be formed under general laws." In section 5 of article XII the prohibition, "the legislature shall have no power to pass any act granting any charter for banking purposes," was followed by "but corporations or associations may be formed for such purposes under general laws." No good reason can be given for the insertion of this latter clause in section 5 of article XII, that would not be equally applicable to the provision under consideration, and its absence there is very significant. We find in other sections similar instances of the care taken by the members of the constitutional convention to make it clear that certain prohibitions as to direct action of the legislature were not intended as prohibiting that body from enacting general laws under which other authorities might do the thing prohibited to the legislature itself. For example, section 12 of article XI declares that "the legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, . . . for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." As to the provision under consideration, they refused to insert any limitation on what was apparently an absolute prohibition of legislation effecting or authorizing extensions of corporate charters, even though, as has been seen, the matter was specially brought to their attention by the discussion on a proposed amendment.

The claim is made in support of plaintiff's construction, that the language of the constitution of 1849 in regard to divorces

was substantially similar to that of the provision under consideration, section 26 of article IV providing "no divorce shall be granted by the legislature," that this clearly did not prohibit the substantive thing, the granting of divorces, but simply prohibited the legislature from directly granting them, and that the language used in the provision here under consideration should be considered *as used in the light of the language* used relative to divorces in 1849, for the purpose of expressing a similar purpose. This argument is, in our judgment, without force. It appears to us that the divorce provision in the constitution of 1849 was intended by the framers of that constitution as no more than a prohibition of special legislation granting divorces, as was held concerning a substantially similar provision in *State* v. *Duket,* 90 Wis. 272, [48 Am. St. Rep. 928, 63 N. W. 83], and the provision can reasonably be construed in that way. Evidently it was not regarded by the framers of the constitution of 1879 as clearly enough expressing such purpose, for they failed to re-enact it, and included the matter in the general section prohibiting the legislature from passing local or special laws in various cases, the fifth subdivision being "granting divorces," (Const., art. IV, sec. 25), thus very clearly indicating their intent as in all other cases where special legislation is the thing being guarded against. The provision of 1849 in the light of the change made in the constitution of 1879 constitutes to our minds an argument against, rather than in favor of, plaintiff's claim.

The other matters treated by the section under consideration, and covered by the prohibition therein contained,—viz., the extension of franchises, and the remission of the forfeiture of franchises and charters,—are, like the matter of the extension of corporate charters, peculiarly within the domain of the legislative department of the state. Except as otherwise prescribed by the constitution, a franchise may be granted or extended only by or under the authority of the state legislature, and the same is true as to the remission of forfeitures of charters or franchises. As to such franchises as are granted directly by the legislature, it would be absurd to construe the provision as simply prohibiting the legislature from making direct extensions, and leaving it at liberty to provide that such an extension might be accomplished by some action of the holder thereof, or granted by some other official body. There

is nothing in the fact of their inclusion in the prohibition to detract from the conclusion that the section was intended as prohibiting legislation of any kind by or under which the things therein mentioned could be accomplished. To the contrary, their inclusion is in conflict with the theory that the restriction of the section was not intended to prevent permissive general laws under which the corporation or holder of a franchise can do the thing prohibited to the legislature. As applied to such matters, the provision so construed would be most unreasonable.

It is much relied upon as showing that there could have been no intent to prohibit general legislation authorizing corporations to extend their own corporate existence, that there was not inserted in the constitution of 1879 any limitation of the period of time for which the legislature might authorize a corporation to be organized, the result being that the legislature may change the present maximum period of fifty years for which a corporation may be organized to one hundred years, or any other period. It is evident from this, of course, that the object of the provision was not to limit the power of the legislature in the matter of corporations thereafter to be organized, as to the time for which they might be originally created. But this is a very different matter from that of extending the life of existing corporations, including those organized under the former constitution, beyond the time fixed in their charters. There may have been, and the records of the constitutional convention indicate that there were, what appeared to the framers of the constitution all-sufficient reasons for prohibiting the authorization of such extensions, while permitting the legislature unlimited power in the matter of the time for which new corporations might be organized, and the fact that they permitted the latter is no indication that they did not intend to prohibit the former.

We do not see how plaintiff is aided by the fact that the five state constitutions which, at the time of the framing of our constitution of 1879, contained any express reference to the subject of charter extension, explicitly confined the restriction on legislative action respecting charter extensions to *special* legislation granting such extensions. These provisions, of course, show that the thing there being guarded against was simply the method of legislation. That, however, as we

CLIV Cal.—22

have already seen, cannot be held to be the situation as to our section adopted in the light of those other provisions, with the portions thereof confining them to restrictions on special legislation carefully eliminated, and refused insertion when offered by way of amendment. Our constitutional convention had some other purpose in view. To our minds, the language used in section 7 of article XII clearly indicated that purpose to be to prevent the legislature from accomplishing by any means the extensions and remissions therein mentioned. When resort is had to the record of the debates of the convention, this view of the purpose of the convention so indicated by the language used is but confirmed. Whatever may be the views of the courts as to the necessity for or propriety of such a provision is, of course, immaterial. If the language used plainly and unequivocally shows a certain and definite purpose to be accomplished thereby, it is the duty of the courts to so construe it as to carry that purpose into effect.

A legislative construction of this provision is claimed to be found in an act of the legislature, approved June 13, 1906 (Stats. 1906, p. 22), purporting to relieve corporations from the penalties of forfeiture incurred by a failure to pay the license-tax levied by the act of 1905 (Stats. 1905, p. 493), and also an act of a similar nature approved March 20, 1907 (Stats. 1907, p. 745). These two very recent acts of the legislature do not show such a continuous course of legislative construction of a constitutional provision as is entitled to any particular weight in determining the proper construction of the provision. It is to be noted that at the same session at which the latter of these acts was adopted, the legislature adopted a proposed constitutional amendment to section 7 of article XII, to be submitted at the next election, providing for extension of corporate charters, thus indicating that while it assumed by the amendment to section 401 of the Civil Code to authorize charter extensions, it was not at all satisfied that it had such power under the present constitutional provision. It is also to be noted that at the session of 1905, a proposed constitutional amendment of the same general nature was adopted by the legislature, to be submitted and which was submitted at the general election of 1906. It is still further to be noted that the act of March 18, 1907, [Stats. 1907, p. 344], amending section 401 of the Civil Code, the act here under consideration,

is the first attempt of the legislature since the adoption of the constitution to enact any law in any way authorizing the extension of the charter of a corporation. Certainly, so far as legislative construction of this constitutional provision is concerned, there is at least as much against the construction contended for by plaintiff as there is in its favor.

It is said that during the twenty-eight years that have elapsed since the adoption of the constitution of 1879, no question has ever been raised as to the validity of section 401 of the Civil Code as it existed at the time of the adoption of the constitution, or as to the validity of section 287 of the Civil Code authorizing corporations organized before the adoption of the codes to come in under the codes and thereby extend their corporate terms for a further period of fifty years—that if section 7 of article XII of the constitution of 1879 is to be construed in the manner contended for by defendant, both sections 287 and 401 of the Civil Code ceased to be operative at the time of the adoption of the constitution, section 1 of article XXII thereof providing that "the provisions of all laws which are inconsistent with this constitution shall cease upon the adoption thereof"—that it is only fair to infer from the absence of any attack on these sections that many corporations have assumed that they were in force and have acted thereunder—and that to now declare them invalid might cause disastrous consequences on a large and wide scale. It is admitted that such considerations cannot control in the construction of a constitutional provision. However, it is proper to say that we do not know that any corporation has assumed to act under either of these sections since the adoption of the present constitution, and we cannot agree that it is fair to infer that many have so acted. Corporations are generally organized for the maximum period in the first instance, and section 401 purported to authorize the extension only when the corporation was organized for a less period, and then only for such time as would enable it to exist for the maximum period from the date of its organization. It is fair to assume that the ante-code corporations that desired to come in under the code, had generally availed themselves of the provisions of section 287 of the Civil Code prior to the adoption of the constitution. But if any corporation has so assumed to act under either of these sections, it does not necessarily follow

from our decision that such action was unwarranted. What we have decided as to the constitutional provision is simply that it prohibited any action by the legislature, by virtue of which any corporate charter might be extended. It may be that sections 287 and 401 of the Civil Code, as they stood at the date of the adoption of the constitution, are not inconsistent with this provision as construed by us, and are still in force. (See *Board of Commissioners* v. *Board of Trustees,* 71 Cal. 310, [12 Pac. 224].)

Every argument that can be advanced in support of the claim of plaintiff as to the proper construction of section 7 of article XII of our constitution has undoubtedly been advanced by the learned counsel representing it. Fully realizing the importance of the question, we have given each and every point our careful consideration, although we may have failed to state some of them in this opinion. We see no escape from the conclusion that the act of March 18, 1907, purporting to amend section 401 of the Civil Code, is in violation of section 7 of article XII of our constitution, and therefore invalid.

If it is desired to conform to the rule existing generally in other states, of allowing by general laws existing corporations to extend their corporate existence under such restrictions as may be considered reasonable, a change in our constitutional provision is essential. A proposed constitutional amendment of this character is now pending to be voted on at the next election, and the people of the state will thus presently be afforded the opportunity to make the change if they so desire.

The alternative writ of mandate heretofore issued herein is discharged and the proceeding dismissed.

Shaw, J., Sloss, J., Lorigan, J., and Henshaw, J., concurred.