[Sac. No. 4412. In Bank.—November 30, 1931.]

PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant, v. STATE OF CALIFORNIA, Respondent.

Thomas J. Straub, W. H. Hatfield and William B. Bosley, for Appellant.

U. S. Webb, Attorney-General, and Jess Hession and Albert F. Zangerle, Deputies Attorney-General, for Respondent.

WASTE, C. J.—Appeal by the plaintiff corporation, a public utility of the State of California, from a judgment of the Superior Court of Sacramento County upon sustaining of demurrer to plaintiff's amended complaint. The action, based on an implied contract, is one in which plaintiff seeks to recover from the State the sum of $23,995, paid under protest to the Secretary of State for the privilege of filing a certificate of increase of plaintiff's capital stock from $160,000,000 to $400,000,000. A tender of $5 as a filing fee was refused, and a total fee of $24,000, or $5 for every $50,000 of such increase, was demanded by the Secretary of State, as provided by subdivision 7 of section 409 of the Political Code, as that section read in 1928, when the certificate of increase was offered for filing. The appellant elected to pay under protest, and thereafter presented

a claim for the amount to the board of control and department of finance (Pol. Code, sec. 667). The claim was rejected, and plaintiff brought this suit against the State, the Secretary of State and the State Treasurer, pursuant to the enabling statute of 1893 (Stats. 1893, p. 57), to secure repayment of the sum of $23,995 alleged to have been unlawfully exacted and retained. Defendants demurred on the ground (among others) that the amended complaint failed to state a cause of action against the State, and that the court had no jurisdiction of the State nor of the subject of the action, for the reason that the State had not consented to be sued on implied contracts. The decision of this court in *Welsbach Co.* v. *State,* 206 Cal. 556 [275 Pac. 436] (decided February 26, 1929), holding that suits on implied contracts might be brought against the State under the statute of 1893, had not then been handed down.

In the briefs filed by both appellant corporation and on behalf of the State the question of jurisdiction was argued upon an assumption that the act of February 28, 1893, which authorized suits for claims "on contract or for negligence" against the State, was still in force. Just prior to the hearing of the appeal by this court, the appellant ascertained that the legislature at its 1929 session had enacted section 688 of the Political Code (Stats. 1929, p. 891) repealing the act of 1893, and, so far as material here, restricting the bringing of suits against the State to claims founded on *express* contract only. These matters appearing for the first time on the oral argument, the appellant and respondent were directed to file supplemental briefs upon the question of jurisdiction.

The appellant concedes that the act of 1929, "if valid, repeals the act of 1893 which authorized suits against the State on implied contracts [for the first time so construed in the Welsbach case], and does not itself authorize such suits", but contends that the jurisdiction of the superior court and of this court to adjudicate on its merits the cause of action alleged was not affected by the 1929 statute.

On the other hand, the attorney-general contends that the only right to bring or maintain the action herein was by virtue of the act of 1893, wherein the State permitted suits on implied contract to be maintained against it, which consent was withdrawn after the filing of appellant's

amended complaint and prior to the filing and hearing of respondent's demurrer, and invokes the principle that the State may withdraw or modify its voluntary consent to be sued even though pending suits may be thereby defeated, there being no contract to be impaired (36 Cyc. 915; *Beers* v. *State of Arkansas,* 20 How. (U. S.) 527 [15 L. Ed. 991]; *State & S. Watson* v. *Bank of Tennessee,* 3 Baxt. (62 Tenn.) 395; *State* v. *State Dispensary Commission,* 79 S. C. 316 [60 S. E. 928]; *Board of Supervisors* v. *Auditor-General,* 68 Mich. 659 [39 N. W. 794]; *O'Neil* v. *State,* 223 N. Y. 40 [119 N. E. 95]). ██ While we recognize the rule relied on by the attorney-general that the repeal of a statute takes away all remedies given by such statute, and defeats all actions pending under it at the time of the repeal, especially where the repealed statute creates a cause of action and provides a remedy not known to the common law, or confers jurisdiction where it did not previously exist (*Freeman* v. *Glenn County Tel. Co.,* 184 Cal. 508 [194 Pac. 705]; *People* v. *Bank of San Luis Obispo,* 159 Cal. 65 [Ann. Cas. 1912B, 1148, 112 Pac. 866]; 23 Cal. Jur. 714, sec. 97), ██ we are here confronted with an anomalous situation in that the legislature in May, 1931, amended section 688 of the Political Code by striking out the word "express" before the word "contract" in the first sentence of the section, thereby restoring the law permitting suits against the State upon contract to the condition it was in prior to the repeal of the act of 1893, i. e., to the condition in which it was when this action on implied contract was commenced. Were the suit to be instituted now, a demurrer on the ground of want of jurisdiction for lack of consent on the part of the State to be sued on an implied contract would have to be overruled and the defendant required to plead to the merits. Therefore, while the law justifies the sustaining of the demurrer upon this ground at the time the trial court ruled thereon, it would seem that by reason of the 1931 amendment of section 688, *supra,* having intervened to again change the law in this regard, the cause should be decided according to the existing law which authorizes suits against the State on such an implied contract as appellant has attempted to plead. We find authority for this conclusion in *People* v. *Bank of San Luis Obispo, supra,* wherein the following appears: ██ "It is, in the general,

true that the province of an appellate court is only to inquire whether a judgment, when rendered, was erroneous or not, but if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed or its obligation denied. . . . In such a case, the court must decide according to existing laws, and if it be necessary to set aside a judgment rightful when rendered but which cannot be affirmed but in violation of law, the judgment must be set aside.'' Such a situation here confronts us. The State having again consented to be sued on implied contract, as it had at the time of the filing of appellant's complaint, and in the absence of a final judgment in the cause, we are of the view that the demurrer on the jurisdictional ground should be overruled.

■ But there is yet to be considered the remaining ground of demurrer, viz., failure to state a cause of action on implied contract. In this regard, it is appellant's contention that the graduated charge for filing a certificate of increase of capital stock prescribed by section 409 of the Political Code is not embraced in the term ''fee'' as used in the title of the act prescribing the fees to be collected by the Secretary of State for performing official acts. It is therefore urged that subdivision 7 of the section, providing for a graduated charge for filing certificates of increase of capital stock is unconstitutional and violative of section 24 of article IV of the state Constitution, the argument being that the statutory charge there prescribed for filing the certificate is neither proportioned to nor in any manner reasonably related to the cost or value of the services performed by the Secretary of State, and, though denominated a ''fee'', it constitutes the imposition of an excise tax, from the exaction of which the appellant, as a public utility, is constitutionally exempt by reason of having to pay a gross receipts tax which is in lieu of all other taxes and licenses. (Secs. 14 and 15, art. XIII, Const.) In the Political Code, as originally enacted in 1872, there was a section, numbered 416, dealing with the subject of fees to be charged and collected by the Secretary of State for services performed in his office. An amendment in 1881 added subdivision 13, prescribing a fee of $5 for filing a certificate of increase of capital stock. (Stats. 1881, p. 65.) There was no modifi-

cation of subdivision 13 for a period of twenty years. In 1901 (Stats. 1901, p. 86), a radical change was introduced by an amendment providing that for filing a certificate of increase of capital stock there should be a graduated charge of $5 for every $10,000, or fraction thereof, of increase.

In 1903 (Stats. 1903, p. 27), the fee was fixed at $5 for every $50,000, or fraction thereof, of increase, the same provision being carried into the section as re-enacted in 1927, and in effect when plaintiff made its tender in this case. The title of this last statute (Stats. 1927, p. 1126) is ''An Act to amend section four hundred nine of the Political Code, relating to fees to be collected by the secretary of state.'' Appellant contends that in so far as subdivision 7 of the act purports to prescribe a graduated charge, which, it asserts, is in effect but an excise tax, the subdivision is not germane to the subject of the original section 416, which related solely to fees to be charged by the Secretary of State, and that the act is, therefore, repugnant to section 24 of article IV of the Constitution, which provides that every act of the legislature shall embrace but one subject, which subject shall be expressed in its title.

Appellant's principal reliance is upon the case of *Fatjo* v. *Pfister*, 117 Cal. 83 [48 Pac. 1012], wherein an act purporting to establish fees chargeable by county and other officers based upon a graduated charge for filing an inventory and appraisement was declared unconstitutional as an *ad valorem* tax upon property and not a fee, appellant arguing that the essential point there decided was that the charges, although designated by the legislature as fees could not be legitimately regarded other than as taxes. The court held it was perfectly plain that the legislature had attempted to levy a *property tax* upon all estates of decedents, infants and incompetents. That is not the case here. The charge involved herein is but a charge imposed upon domestic corporations as a condition precedent to doing business in this State. ▪ It is well settled, of course, that a state, subject only to constitutional limitations, may impose any condition it may see fit upon a domestic corporation desiring to organize under the laws of that state, and may in fact prohibit the formation of domestic corporations entirely. (*Boca Mill Co.* v. *Curry*, 154 Cal. 326 [97 Pac. 1117]; *Bank of California* v. *San Francisco*, 142 Cal. 276 [100 Am.

St. Rep. 130, 64 L. R. A. 918, 75 Pac. 832]; *City Properties Co.* v. *Jordan*, 163 Cal. 587 [126 Pac. 351]; *Kaiser Land & Fruit Co.* v. *Curry*, 155 Cal. 638 [103 Pac. 341, 347]; *Ashley* v. *Ryan*, 153 U. S. 436 [38 L. Ed. 773, 14 Sup. Ct. Rep. 865].) This State has seen fit to impose upon domestic corporations, as a condition precedent to doing business in the State, a charge depending upon the amount of capitalization, and has likewise seen fit to impose a further condition in the form of an increased charge in the event the capitalization is increased.

The attorney-general argues that the amount of the exaction is not incompatible with the idea of a filing fee, and that to do other than to graduate this fee in proportion to the amount of increase would be inequitable and unjust to similar capitalizations as compared with the capitalization here involved; that the fee for filing of increase of capital stock is on the same graduated plan as for filing original articles of incorporation; that it would be difficult to differentiate the case of the filing fee for filing original articles of incorporation and that of filing a certificate of increase, as far as the filing fees are concerned; and that it would necessarily follow that the exaction for filing original articles of incorporation would be considered in the same light; and, if the State has the right in one case, it also has it in the other; that a possible abuse is suggested in that a corporation could file original articles of incorporation for a nominal amount and immediately file a certificate of increase of capital stock; and that from the foregoing it may be clearly determined that the legislature intended to provide the same plan of graduated fees for the filing of certificates of increase of capital stock as for the filing of the original articles of incorporation, the amount of the fee to be dependent upon the amount of capital involved. We are of the view that these contentions rest upon a reasonable construction of the statute involved. Both charges are imposed as a condition precedent to doing business in California, and are therefore within the power of the State under the cases above cited.

The State, in granting permission to a $160,000,000 corporation to function on payment of a certain fee, cannot be held to have thereby given its consent to that cor-

poration to capitalize at $400,000,000, without compliance with other reasonable conditions. Nor, in increasing the charge for increased capitalization as part of the original permission granted to such corporation to function in this State, is the State restricted to imposing the charge then provided by the law of the State. ■ A corporation, organizing under the laws of this State, impliedly consents to be bound by all the laws of this State. The Constitution (art. XII, sec. 1) expressly provides that the laws in reference to corporations may be altered or repealed by the State. Section 404 of the Civil Code provides that "the legislature may, at any time, amend or repeal this part, or any title, chapter, article, or section thereof, and dissolve all corporations created thereunder". The extent of this reserve power to alter, amend or repeal the laws applicable to corporations was well stated in *Kaiser Land & Fruit Co.* v. *Curry, supra,* in dealing with the act providing for a license tax upon corporations, as follows: "It is substantially the purchase price which the state has seen fit to charge for the continuance of the privilege of being and acting as a corporation. Although the privilege had already been granted to plaintiff and all other existing corporations, it had been granted subject to the power reserved by the state to be exercised by its laws of revocation or the imposition of new charges therefor or new conditions upon which it might be enjoyed." Appellant herein must be deemed to have consented to the power of the State to change the terms and conditions upon which that corporation was permitted to organize in this State. Since this is so, it necessarily follows that the charge to be collected by the State for permission to increase the capital stock of such corporation is but a fee—a part of the "purchase price" which the State charges for the privilege of doing business as a domestic corporation, and must be measured by the law in force when such application is made.

Having reached this conclusion, and finding no constitutional or other inhibition in aid of appellant's contention that an unconstitutional tax was demanded of it by the Secretary of State, we are of the view that the amended complaint does not state a cause of action upon an implied contract or otherwise against the State to recover the

amount sued for, and that the demurrer was properly sustained by the trial court.

Judgment affirmed.

Curtis, J., Shenk, J., Richards, J., and Seawell, J., concurred.

Rehearing denied.