STATE EX REL. SCHOOL DISTRICT No. 28, RELATOR, v.
URTON, COUNTY TREASURER, RESPONDENT.

(No. 5,965.)

(Submitted June 2, 1926.  Decided June 22, 1926.)

[248 Pac. 369.]

*Mandamus—Schools and School Districts—District Divided by
New County Line Becomes Joint District, When.*

School District a Public Corporation.
  1.  A school district lawfully organized is a public corporation
  and remains such until disorganized in some manner recognized
  by law.
School Districts—New Counties—Establishment by County Commis-
  sioners of District Lying Partly in New County and Partly in
  Old a Nullity.
  2.  Where the county commissioners of one of two counties out
  of which a new county was created, instead of dividing the new
  county into a convenient number of school districts as required
  by the New Counties Act, established a district a portion of
  which lay in the new county and a portion in one of the old
  counties, their action was a nullity.
Same—Establishment in New County Matter of Discretion on Part of
  County Commissioners—Courts cannot Interfere.
  3.  The matter of dividing a new county into school districts
  being lodged in the discretion of the commissioners of the old
  county out of which the new one is created, a court cannot, upon
  finding that the discretion had been erroneously exercised, sub-
  stitute its discretion and establish the boundaries so as to exclude
  territory which should not have been included, or hold the order
  valid as to the portion properly included and invalid as to the
  other.
Same—District Cut in Two by New County Line Becomes Joint Dis-
  trict, When.
  4.  *Held,* on *mandamus,* that where upon the creation of a new
  county the territory embraced within a school district for many
  years existent in one of the two old counties out of which the
  new one was created, was cut in two, causing it to lie partly in the
  new county and partly in the old, and the county commissioners
  charged with the duty of dividing the new county into school dis-
  tricts did not properly perform it but left the boundaries of the
  district in question as they were before the creation of the new
  county, the district *ipso facto* became a joint one, and therefore
  refusal of the county treasurer of the old county in which a

---

1.  School district as public corporation, see notes in **51 Am. St. Rep.**
120; 17 **Ann. Cas.** 511.  See, also, 24 **R. C. L.** 564.
3.  See 24 **R. C. L.** 566.

portion of the district lay to transmit to the treasurer of the new county the funds collected by him as taxes upon the property within that portion for school purposes, was wrongful.

[1]    Schools and School Districts, 35 Cyc., p. 832, n. 81.
[2, 3]    Schools and School Districts, 35 Cyc., p. 844, n. 44 New.
[4]    Schools and School Districts, 35 Cyc., p. 844, n. 44 New; p. 855, n. 19.

Original application by the State, on the relation of School District No. 28 of Lake and Missoula Counties, for a writ of mandate to Harry Urton, as Treasurer of Missoula County. Peremptory writ issued.

*Mr. Walter L. Pope* and *Mr. Clark T. Brown,* for Relator, submitted a brief; *Mr. Pope* argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. C. N. Davidson,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Davidson* argued the cause orally.

*Mr. Charles N. Madeen, Amicus Curiae,* submitted a brief, and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

For many years prior to 1923 there existed in Missoula county a school district known as No. 28. In October, 1922, proceedings were instituted before the board of county commissioners of Flathead county for the formation of Lake county from portions of Flathead and Missoula, pursuant to the provisions of the "New Counties Act." (Rev. Codes 1921, secs. 4390–4407.) The greater portion of the proposed new county lay in Flathead county.

On January 24, 1923, the commissioners determined the truth of the allegations of the petition for the new county, as required by section 4394, and pursuant thereto submitted the question of creating the new county to the electors residing therein. As a result of the election Lake county was formed, and it began to function on the tenth day of August, 1923.

Having determined the validity of the proceedings for the institution of the new county, compelling the submission of the question of its creation to the electors, it was the duty of the commissioners to "divide the proposed new county into a convenient number of township, road and school districts and define their boundaries and designate the names of such districts." (Sec. 4394.) On January 24, 1923, the commissioners, as a part of their findings and resolutions with respect to the new county, made an order concerning school districts of the new county, which in part is as follows: "Be it further ordered that the school districts of the proposed new county of Lake be and the same are hereby established, and the boundaries thereof fixed as follows, to-wit:

"School Districts Number Twenty-eight and Nineteen, as the same are now fixed and established by law, shall constitute and comprise the same numbered school districts in the proposed new county of Lake, and the boundaries thereof, as heretofore established, are hereby fixed and determined as the boundaries of each of said respective school districts save and except School District Number Twenty-eight shall be a joint school district of the said proposed new county of Lake and the county of Missoula, and shall include and embrace the same territory as is now therein."

As the boundaries of Lake county were and are established the territory embraced in School District No. 28 lies partly within Lake county and partly within Missoula county. The schoolhouses in the district are within Lake county. At all times subsequent to January 24, 1923, School District No. 28 has continued to function in all respects as before; school elections have been held within the district, in which electors from all parts of the school district including that within Missoula county, have participated; school trustees and officers have been elected within the entire district; taxes have been duly levied and assessed upon all of the property situated within the entire district and have been paid to the treasurers of the counties of Lake and Missoula as provided by law, that

is to say, those having property within Lake county have paid the taxes to the treasurer of that county and those having property within Missoula county have paid their taxes to the treasurer of Missoula county. These taxes have been paid without objection or protest except that six property owners within the portion of the district in Missoula county paid the first installment of their school taxes for the year 1925, aggregating $319.19, due November 30, 1925, under protest. Two of these have commenced actions against the county treasurer of Missoula county to recover the sums of money paid by them under protest and those suits are now pending.

The treasurer of Missoula county transmitted to the treasurer of Lake county the proceeds of the taxes levied and assessed for school purposes upon the property in District No. 28 within Missoula county, which came due and payable to the treasurer November 30, 1923, May 31, 1924, November 30, 1924, and May 31, 1925.

Prior to August 10, 1925, the board of trustees of the district certified to the county superintendent of schools, and to the board of county commissioners of Missoula county their request that the board make a levy of taxes for school purposes for the support of the schools of the district upon the lands and property within the district situated in Missoula county, and the board on that day in compliance with the request of the board of trustees, levied the tax. And thereafter the county treasurer of Missoula county collected all of the taxes due except the $319.19 above mentioned. On May 12, 1926, the moneys collected by the treasurer of Lake county for the district and available for the payment of the general expenses of its operation were exhausted. On that date the district was lawfully indebted to Paul R. Dana in the sum of $145 for his services as a teacher, and the district, through its officers, executed and delivered to him a warrant for the amount, drawn upon the treasurer of Missoula county; and while the treasurer had in his custody sufficient funds, realized from taxes collected from property in that part of the school district

which lies within Missoula county, to pay the warrant, he refused to do so. Further he notified the officers of the school district that he would neither pay the warrants of the district drawn upon funds in his hands, nor would he transmit the funds or any portion thereof to the treasurer of Lake county.

Believing that, after the creation of Lake county that portion of School District No. 28 which lies within Missoula county was no longer a part of that school district but was abandoned territory, the county superintendent of schools of Missoula county, on November 23, 1925, made an order attaching what she deemed the abandoned territory to School District No. 41 of Missoula county. Afterward, upon a petition filed with the board of trustees of School District No. 41 of Missoula county, proposing to organize a new school district out of a portion of School District No. 41, and following proceedings had thereunder, the county superintendent, in February, 1926, made an order purporting to create a new district known as District No. 28 of Missoula county, by including therein the same area which she had previously undertaken to attach to District No. 41. After that an election was held in the new district and school trustees were elected, but nothing further has been done in the matter. The children of the so-called new district are attending one of the schools maintained by original District No. 28.

In view of the foregoing situation School District No. 28 "of Lake and Missoula counties" applied to this court for a writ of mandate directed to the treasurer of Missoula county, commanding him either to transmit the funds in his hands derived from the taxes levied for school purposes in the relator district to the treasurer of Lake county, or to pay the warrant drawn upon him in favor of Paul R. Dana. We issued an alternative writ which the respondent, through the attorney general, has moved to quash.

It is not questioned that prior to the creation of Lake county [1] School District No. 28, then lying wholly within Missoula county, was organized in compliance with the laws of this state.

It was therefore a public corporation. (Sec. 1022, Rev. Codes 1921; *Henderson* v. *School District No. 44,* 75 Mont. 154, 242 Pac. 979; *O'Brien* v. *School District No. 1,* 68 Mont. 432, 219 Pac. 1113.) It is still a public corporation unless it has been disorganized in some manner recognized by law.

By their order of January 24, 1923, the commissioners sought to maintain the autonomy of the district by retaining the [2, 3] original boundaries and denominating it a joint district. Indeed, it is probable they thought the creation of the new county, dividing the district, *ipso facto* made it a joint district in virtue of the provisions of section 1038, Revised Codes of 1921. Counsel for relator and *amicus curiae* surmise that when the commissioners made their order they had not been apprised of the then recent decision of this court in *State ex rel. Redman* v. *Meyers,* 65 Mont. 124, 210 Pac. 1064, declaring that section invalid.

It is plain to us that the order of the commissioners, in so far as it relates to District No. 28, is a nullity. They did not possess authority to make any order with respect to the territory of the district which, after the creation of Lake county, would lie within the boundaries of Missoula county; and to this all counsel agree. But they do not agree upon the result of the order which was made.

It was suggested upon the argument that the order may be deemed valid as to that portion of the district which lies within Lake county, even though it must be held void as to the portion in Missoula county. But the commissioners did not intend to do that and we cannot make an order for them. The statute entrusts the commissioners with discretion to divide the proposed new county into a convenient number of school districts and to define the boundaries thereof. With the exercise of that discretion we may not interfere; we are not permitted to substitute our discretion for theirs.

The order respecting District No. 28 being a nullity, what [4] is the situation with respect to the district? The answer, it seems to us, is obvious. On the 10th of August, 1923, Dis-

trict No. 28 was a public corporation. The mere fact that it was then intersected by a county boundary line did not destroy its autonomy. But what was done and what was not done had the effect of creating a joint district. Districts lying partly in one county and partly in another have been recognized in Montana since 1871. (Codified Statutes 1871, p. 612, sec. 20; Revised Statutes 1879, p. 643, sec. 1107; Compiled Statutes 1887, p. 1179, sec. 1878.) These sections related to the duty of the clerk of the district court "whenever a district is formed lying partly in two adjoining counties"; but no machinery was provided for the formation of such a district. Thus the law recognized the existence of joint districts even before it provided a method for their creation. (*Las Animas & San Joaquin Land Co.* v. *Preciado,* 167 Cal. 580, 140 Pac. 239.)

By Act approved March 11, 1895 (Pol. Code, sec. 1752), it is provided in part that "joint districts (districts lying partly in one county and partly in another) may be formed in the same manner as other new districts are formed, except that the petition herein provided for must be made to the county superintendent of each county affected; but in the case of joint districts, all of the provisions herein enumerated for the formation of a new district must be by concurrent action of the superintendent of each county affected." Section 1752 became 841 of the Revised Codes of 1907. The provision above quoted was re-enacted as section 408 of Chapter 76 of the Laws of 1913, and is now section 1035 of the Revised Codes of 1921.

Section 1577 of the Political Code of California contains substantially the same provision as our 1035, except that there the formation of a new district must be by the concurrent action of the superintendent of schools and the board of supervisors of each county affected. In *Las Animas & San Joaquin Land Co.* v. *Preciado, supra,* the appellant contended that a joint district could only come into existence by following the method prescribed in sections 1577 *et sequitur* of the California Code. But the position of the respondent that the law recognized and declared that a school district whose territory, by division of a county, lay partly in one and partly in another

county, *ipso facto* became a joint district, was confirmed by the court. And the court observed: "If a part of the territory of a regularly recognized school district shall be taken from it solely by reason of the fact that through the creation of a new county a part of the land fell into such new county, we would look for some legislative declaration to that end. (*Conover* v. *Parker*, 57 N. J. L. 631, 31 Atl. 769.)"

It may be said that there is a declaration to that effect in the New Counties Act, the provisions of which command the commissioners having jurisdiction of the matter to divide the proposed new county into a convenient number of school districts and to define their boundaries and designate their names, But if the board fails to do so it cannot be held that by its failure to follow the law it blots out of existence a public corporation charged with many duties toward the public as well as obligations to *bona fide* creditors. In this instance it is conceded that District No. 28 had issued bonds in the sum of $155,000, a large portion of which are held and owned by the state of Montana and the state board of land commissioners of this state.

But it is urged that this court in the *Redman Case* has held that a joint school district may not be created by the division of the district through the creation of a new county. The decision does not so hold. There, as here, the district in question was not a joint district prior to the creation of the new county. It was held that it was not made a joint district by virtue of the fact alone that the new county boundary line divided it into two parts, and then the reason followed: for the Act under which Judith Basin county was created commanded the county commissioners of Fergus county to divide the territory to be included in the new county into a convenient number of school districts, and to define their boundaries and designate their names,—and, in the absence of any showing to the contrary, it was presumed that the commissioners had done their duty. If the commissioners of Judith Basin county had organized the portion of District No. 44 lying within Judith Basin county into a new district, of course it would have been

76 Mont.—30

separated from the parent district and no joint district would have existed. In the instant case the commissioners failed to follow the statute and the order which they attempted to make is a nullity. The *Redman Case* does not conflict with our present holding.

Incidentally, it is interesting to note that two attorneys general of Montana have held that where a county division line intersects a school district, the district becomes a joint district "and the funds are jointly held by county treasurers." (3 Opinions of the Attorney General, 123; 8 *Id.* 72.) But it is fair to say that in neither opinion was any provision of the "New Counties Act" in question.

The motion to quash is overruled. Let a peremptory writ issue as prayed for.

*Writ granted.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS. concur.